# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53370-7-II |
| Respondent, | |
| v. | |
| VICTOR WAYNE SPRAGUE, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Officers executed a search warrant at Victor Wayne Sprague's apartment and found about 10 grams of methamphetamine, a scale, plastic grocery store bags, and a pipe in his living room. He was charged with one count of possession with intent to deliver methamphetamine within 1,000 feet of a school bus route stop. At a jury trial, the State relied on the evidence recovered from Sprague's apartment, as well as incriminating statements Sprague made to the investigating officers. The jury found Sprague guilty, and Sprague appeals his conviction.

Specifically, Sprague argues that the State failed to establish corpus delicti to support the admission of his incriminating statements and that, without these statements, there was insufficient evidence to support a conviction for possession with intent to deliver. Sprague also contends that the trial court erred when it declined to grant Sprague's motion for a continuance on the morning of trial, that Sprague's counsel was constitutionally ineffective, and that cumulative errors deprived him of a fair trial.

The corpus delicti analysis requires us to consider whether the evidence also supports a hypothesis of mere possession. Because officers testified that it is not uncommon for drug users or addicts to have a scale, and the recovered grocery store bags were not torn into small pieces to serve as packaging, we conclude that Sprague's incriminating statements were improperly admitted under the corpus delicti rule. Even so, considering the evidence in the light most favorable to the State, sufficient evidence existed to support Sprague's conviction for possession with intent to deliver methamphetamine without his incriminating statements. We conclude that the trial court did not abuse its discretion in denying a continuance, and Sprague was not deprived of effective assistance of counsel. We need not address his cumulative error claim. We therefore affirm Sprague's conviction.

FACTS

I. INVESTIGATION AND ARREST

Officers from the Longview Police Street Crimes Unit executed a search warrant at Sprague's apartment. The warrant authorized a search of Sprague's apartment and person for "illegal narcotics and related contraband." Clerk's Papers (CP) at 2. It did not authorize a search of Sprague's cell phone or other electronics.

Officers discovered two small bags of methamphetamine in Sprague's living room near his recliner. One bag weighed 8.80 grams and the other weighed 1.41 grams, including the weight of the bags. The officers located a digital scale with methamphetamine residue and a bundle of plastic grocery bags, also in the living room. They found a "homemade meth pipe," "scrapings" from the pipe, and a metal container with methamphetamine residue. 1 Verbatim Report of Proceedings (VRP) at 129, 140. They did not find any cash, safes, pay/owe sheets, or weapons.

During the search of his apartment, Sprague was detained and questioned. After receiving *Miranda*[1] warnings, Sprague admitted to officers that the methamphetamine belonged to him. He also admitted to selling small amounts of methamphetamine inside his apartment and in the alley behind his apartment. Sprague admitted that he typically tears off pieces of plastic grocery bags to package the methamphetamine.

Sprague was arrested and charged with one count of possession with intent to deliver methamphetamine. The State added an enhancement for committing this act within 1,000 feet of a school bus route stop.

## II. PRETRIAL MOTIONS REGARDING SPRAGUE'S STATEMENTS

Before trial, Sprague requested a hearing pursuant to CrR 3.5 to determine the admissibility of his statements to officers. Sprague also filed a motion to dismiss, arguing that the State lacked the independent evidence necessary to corroborate his incriminating statements and establish the corpus delicti of possession with intent to deliver.

In his motion to dismiss, Sprague explained that "[a] defendant's incriminating statement alone is insufficient to establish that a crime took place." CP at 13 (citing *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006)). Under the corpus delicti rule, the State must present independent evidence in the form of "prima facie corroboration of the crime described in the incriminating statement." *Id.* (citing *Brockob*, 159 Wn.2d at 328). In part, *Brockob* established that the State's independent evidence "'must be consistent with guilt and inconsistent with a[] hypothesis of innocence.'" 159 Wn.2d at 329 (alteration in original) (internal quotation marks omitted) (quoting *State v. Aten*, 130 Wn.2d 640, 660, 927 P.2d 210 (1996)).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At a pretrial hearing on the motion, Sprague argued that "the only evidence independent of [] Sprague's admissions beyond his mere possession all show[ed] personal use," not an intent to deliver. 1 VRP at 18. Specifically, Sprague argued that the evidence officers found was in a private residence and it was all located in one area, near a recliner. Officers found one scale near the recliner "which could be for personal use." 1 VRP at 17. Sprague emphasized that in most cases finding sufficient evidence to support an inference of an intent to deliver, there is a large amount of cash, and there was no cash or other method of payment recovered from Sprague's apartment. The drugs were not divided into smaller amounts or packaged for sale. A plastic grocery store bag was "lining a trash can . . . not ripped into small pieces." *Id.* There were no safes or locked containers, no documents or communications reflecting sales, and no observed transactions.

The State responded to Sprague's motion by arguing that its independent evidence was "sufficient to support a *conviction* for possession with intent to deliver" and, therefore, it must be sufficient to establish corpus delicti. CP at 21. Relying on the standard for sufficient evidence to support a conviction of possession with intent to deliver, the State reasoned that it only needed to show possession plus "'one additional factor suggestive of intent.'" CP at 20 (quoting *State v. Whalen*, 131 Wn. App. 58, 63, 126 P.3d 55 (2005), and relying on *State v. Hotchkiss*, 1 Wn. App. 2d 275, 280, 404 P.3d 629 (2017)). The State reasoned that under *Hotchkiss* "[a] conviction requires proof beyond a reasonable doubt; the corpus delicti rule requires only prima facie evidence. Evidence that would support a conviction must also satisfy the corpus delicti rule." CP at 21. The State pointed to the presence of the "scale . . . other items with methamphetamine residue on them, and plastic grocery-style bags" as additional evidence suggestive of intent. CP at 20-21.

The trial court denied Sprague's motion to dismiss. The trial court discussed its understanding of the relevant case law and determined that *Hotchkiss* provides the controlling standard. The trial court recognized that the *Brockob* court's corpus delicti analysis takes into account whether there is a hypothesis consistent with innocence. But the trial court explained that in *Hotchkiss*, this court recognized that "if [it] applied [the *Brockob* analysis], the rule of some amount of drugs plus one additional corroborating factor would be swallowed up by the [*Brockob*] rule." 1 VRP at 22. So the trial court looked for "evidence of the drugs plus one additional factor[] . . . suggestive of the intent to [deliver]." *Id.*

The trial court determined that the pipe, as well as the absence of money, safes, and pay/owe sheets, suggested personal use. It found that the large amount of methamphetamine and the packaging material in the form of grocery bags suggested an intent to deliver. As for the scale, the trial court concluded that it could support inferences of both personal use and an intent to deliver. The trial court denied the motion to dismiss, concluding the corpus delicti rule was satisfied by the amount of methamphetamine plus two additional factors—packaging material and a scale.

The trial court acknowledged that, had it instead applied the *Brockob* court's analysis, it would have granted Sprague's motion. But applying *Hotchkiss*, the State prevailed.

The trial court held a CrR 3.5 hearing on the morning of trial. It found that the circumstances of Sprague's questioning constituted custodial interrogation, but Sprague received *Miranda* warnings, understood his rights, and validly waived them. The trial court ruled Sprague's statements admissible at trial. It did not revisit the corpus delicti doctrine at the CrR 3.5 hearing.

### III.   DISCLOSURE OF A PRIOR CONTROLLED BUY

On the morning of trial, the State informed Sprague's counsel that officers had conducted a controlled buy of methamphetamine from Sprague prior to executing the warrant underlying this case. The prosecutor explained that she was not going to use this information at trial because the case law is "pretty clear that prior deliveries are not admissible to prove intent." 1 VRP at 32. She told the trial court she "hadn't intended on using [this information] as anything but essentially leverage in negotiating the current, pending case." *Id.* The prosecutor presented a new plea offer to Sprague—if Sprague decided to plead guilty before trial to "something besides a possession," then the State would not file a new charge of possession with intent to deliver based on the controlled buy. *Id.*

Defense counsel requested a continuance, arguing that she needed time to investigate the controlled buy. Counsel argued that the new information affected "how [the defense would] approach the whole case" because the controlled buy involved the same police unit that executed the warrant underlying this case, it potentially involved the same informant, and an additional charge could affect Sprague's offender score and change his sentencing risk. 1 VRP at 30.

The trial court granted a "quick break" and asked the prosecutor to obtain the new probable cause report for defense counsel. 1 VRP at 33. The trial court recognized that this information was necessary for counsel to adequately advise her client about his options in advance of negotiations.

After the break, defense counsel again asked for a continuance, citing Sprague's constitutional rights to effective representation and to present a defense. The trial court rejected the argument that this information impacted Sprague's ability to present a defense because the

controlled buy occurred on a different date, raised a "distinct factual pattern," and was not relevant to the allegations in this case. 1 VRP at 37.

As for defense counsel's argument that she would be unable to provide competent representation, the trial court granted another short recess so that defense counsel could do additional research on how a new charge might impact Sprague's offender score and sentencing risk. The trial court remarked that time pressure was not uncommon in plea negotiations. The trial court also waited to swear in the jury until after lunch so that defense counsel could have the lunch hour to confer with her client.

Thus, the trial court declined to grant a continuance, but it did grant multiple short recesses so that defense counsel could review the probable cause statement with Sprague, research his possible sentence if convicted of this new charge, and discuss his options.

## IV. JURY TRIAL

Sprague rejected the plea offer. At trial, three of the officers who executed the warrant at Sprague's apartment testified: Jordan Sanders, Benjamin Mortensen, and Calvin Ripp. The officers testified that they recovered two bags containing a total of approximately 9 to 10 grams of methamphetamine. The officers agreed that this amount is consistent with an intent to deliver. Sanders stated that a "half-ounce[2] would be appropriate for selling, not personal use." 1 VRP at 100. He said that although "[e]ach person is going to be different, . . . typically we see either .2 of a gram or a half of gram of -- is a general use . . . [and] it could be a couple times a day or one time a day." 1 VRP at 101. Mortensen confirmed that "it's common for people in this area to use -- at

---

[2] A half of an ounce is about 14 grams.

7

a time use a tenth of a gram to two-tenths of a gram per time. . . . And it wouldn't be uncommon for somebody to do this two or three times a day." 1 VRP at 123.

The officers also testified that they recovered a scale with methamphetamine residue, a "homemade meth pipe," a metal container with methamphetamine residue, and "scrapings" from the pipe. 1 VRP at 129, 140. Mortensen stated that "the majority of the evidence was located near one chair [Sprague's recliner]" and explained that while a scale can be an indication that someone is dealing, "it's not uncommon for a user or an addict to have a scale." 1 VRP at 146, 150. The officers told the jury that they did not find any log entries, ledgers or receipts, cash, safes, or weapons, all of which is evidence that typically suggests an intent to deliver.

When asked about common packaging for methamphetamine in the area, Sanders testified, "Typically, we see it in a Ziploc-type bag, small. . . . We also find grocery bags like you'd find at Fred Meyer[] or a Safeway Store where they're torn off" and the ends are tied or burned together. 1 VRP at 95. Mortensen agreed that plastic grocery bags are "commonly used for packaging material" where pieces are torn or cut off the bag. 1 VRP at 139. On cross-examination, Sanders clarified that the grocery bags found in Sprague's apartment "were torn but not [torn] into small pieces." 1 VRP at 103. Ripp recalled seeing "bundles of baggies . . . [that] were whole," 1 VRP at 115, and Mortensen testified to logging bags into evidence that were "full" rather than "ripped-up," 1 VRP at 150-51. Defense counsel pointed out that a plastic grocery bag was being used to line Sprague's garbage can.

Sanders also testified to the incriminating statements Sprague made to the officers. Sanders recalled that when asked where his methamphetamine was, Sprague pointed officers to the area "by the recliner." 1 VRP at 99. Sprague admitted to purchasing a half ounce of methamphetamine

every few days, using some of that amount himself, and selling some of it to a few people. Sanders also testified that Sprague said he would tear up grocery bags to package the methamphetamine.

After the State rested, Sprague renewed his motion to dismiss for insufficient evidence to establish corpus delicti, this time relying on testimony presented at trial. Sprague asked the trial court to reconsider in light of Washington Supreme Court cases that require the independent corroborating evidence to be "consistent with guilt and inconsistent with the hypothesis of innocence." 2 VRP at 183-84 (discussing *State v. Cardenas-Flores*, 189 Wn.2d 243, 264, 401 P.3d 19 (2017); *Brockob*, 159 Wn.2d at 329; *Aten*, 130 Wn.2d at 660). The trial court declined to reconsider its prior ruling.

The jury was instructed that if it was not satisfied beyond a reasonable doubt that Sprague was guilty of possession with intent to deliver methamphetamine, then it should consider whether he was guilty of the "lesser crime" of possession of methamphetamine. CP at 86.

During closing argument, defense counsel asked the jury to find Sprague guilty of the lesser included offense of possession of methamphetamine and argued that "this is a simple case about simple possession." 2 VRP at 221. The State reiterated that the evidence presented included 9 to 10 grams of methamphetamine, a scale, and plastic grocery bags. The State also relied on Sprague's statements to the officers, reminding the jury that "the defendant himself said [']I sell drugs.[']" 2 VRP at 223.

The jury found Sprague guilty of one count of possession with intent to deliver methamphetamine. The jury also found that Sprague committed this offense within 1,000 feet of a school bus route stop.

## ANALYSIS

## I. CORPUS DELICTI

Sprague argues there was insufficient evidence to establish the corpus delicti of possession with intent to deliver and, therefore, his statements to officers were inadmissible. And without the incriminating statements, Sprague argues there was insufficient evidence to support a conviction for possession with intent to deliver. We agree that there was insufficient evidence to establish the corpus delicti of possession with intent to deliver because the independent evidence was consistent with a hypothesis of mere possession. Thus, Sprague's incriminating statements were improperly admitted. But we conclude that even without Sprague's incriminating statements, there was sufficient evidence to support his conviction.

A.     Corpus Delicti in Washington

"Corpus delicti means the 'body of the crime.'" *Brockob*, 159 Wn.2d at 327 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 655). The doctrine ensures that the specific crime described in an incriminating statement "actually occurred." *Id.* at 328. "A defendant's incriminating statement alone is not sufficient to establish that a crime took place." *Id.* (footnote omitted). For a defendant's statement to be considered, the State must provide independent corroborating evidence of the crime described in the statement. *Id.*

 The Supreme Court recently reiterated that corpus delicti is a rule of sufficiency as well as a rule of evidence. *Cardenas-Flores*, 189 Wn.2d at 256. In determining the sufficiency of independent evidence under the corpus delicti rule, "we assume the 'truth of the State's evidence and all reasonable inferences from it in the light most favorable to the State.'" *Id.* at 264 (quoting

*Aten*, 130 Wn.2d at 658). Our review of the sufficiency of the evidence for purposes of corpus delicti is de novo. *State v. Green*, 182 Wn. App. 133, 143, 328 P.3d 988 (2014).

In *Cardenas-Flores*, the Supreme Court also reiterated that Washington has rejected a more relaxed "trustworthiness" standard adopted by the United States Supreme Court and a majority of other states, which considers whether there is evidence supporting the trustworthiness of the defendant's incriminating statements. 189 Wn.2d at 258. "'Notably, we are among a minority of courts that has declined to adopt a more relaxed rule.'" *Id.* (quoting *Brockob*, 159 Wn.2d at 328).

Instead, there are three specific requirements for establishing corpus delicti in possession with intent cases in Washington: (1) "the evidence must independently *corroborate*, or confirm, a defendant's incriminating statement," (2) the independent evidence "'must be consistent with guilt and inconsistent with a[] hypothesis of innocence,'" and (3) the evidence must corroborate "not just *a crime* but *the specific crime* with which the defendant has been charged." *Brockob*, 159 Wn.2d at 328-29 (alteration in original) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660). The *Brockob* court emphasized that *Aten* "increased the State's burden" by holding that "if the evidence supports both a hypothesis of guilt and a hypothesis of innocence, it is insufficient to corroborate the defendant's statement." *Id.* at 330 (citing *Aten*, 130 Wn.2d at 660-61); *see also Whalen*, 131 Wn. App. at 63 ("[T]he independent evidence must support a logical and reasonable inference of criminal activity only."). The *Cardenas-Flores* court also recited this principle. 189 Wn.2d at 264. Prima facie corroboration exists where "the independent evidence

supports a 'logical and reasonable inference of the facts sought to be proved.'" *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656).[3]

For charges of possession with intent to deliver, corpus delicti requires evidence of an intent to deliver in addition to evidence of possession. "Mere possession, without more, does not raise an inference of the intent to deliver." *State v. Cobelli*, 56 Wn. App. 921, 925, 788 P.2d 1081 (1989). This same concept has been regularly applied to charges of possession with intent to manufacture. In *Brockob*, a consolidated case involving three defendants, the court found evidence that one defendant had stolen between 15 and 30 packages of Sudafed insufficient to establish the corpus delicti of possession with intent to manufacture. 159 Wn.2d at 332-33. The court explained, "[T]he mere assertion that Sudafed is *known to be used* to manufacture methamphetamine does not necessarily lead to the logical inference that [the defendant] intended to do so, without more." *Id.* at 331-32. The independent evidence "proved only that [the defendant] intended to steal Sudafed." *Id.* at 332; *see also Whalen*, 131 Wn. App. at 64 (rejecting the State's argument that a prima facie case of intent to manufacture was established by the defendant "attempting to shoplift more pseudoephedrine than he could legally purchase at one time").

Similarly, in *Cobelli*, Division One reversed a finding of corpus delicti where the defendant possessed a small amount of drugs in several baggies and some cash and officers observed the defendant "carry out a series of short conversations with several 'clusters' of people . . . . [in] 'a

---

[3] The *Cardenas-Flores* court focused on two elements of corpus delicti, "(1) an injury or loss (2) caused by someone's criminal act," and the court reasoned that in this analysis, mens rea is not required to satisfy corpus delicti. 189 Wn.2d at 263-64. But *Cardenas-Flores* involved a charge of second degree child assault which requires an injury to a particular person. When addressing corpus delicti in possession with intent cases, the Supreme Court and this court have discussed the requirements set forth in *Brockob*. 159 Wn.2d at 328-29; *Hotchkiss*, 1 Wn. App. 2d at 282-87 (applying *Brockob* in the majority and concurrence).

high drug area' . . . [in a] 'manner . . . real indicative of what [the officers had] seen before in the sales and purchase of drugs.'" 56 Wn. App. at 922. Division One observed that "[t]he record in this case lacks the type of circumstantial evidence often found to raise the inference of an intent to deliver, such as the observation of an exchange or possession of significant amounts of drugs or money." *Id*. at 924. The court concluded that these circumstances were "no more indicative of an intent to deliver than they [were] of mere possession." *Id*. at 925.

In contrast, the *Brockob* court held that the corpus delicti of possession with intent to manufacture was established with respect to one defendant, Gonzales, where officers recovered ephedrine *and* two different sizes of coffee filters from the backseat of Gonzales's car, and it appeared Gonzales was "working in concert with another person to acquire more than the legal amount of ephedrine." 159 Wn.2d at 333. This court held corpus delicti was established in *Hotchkiss*, where the majority focused on the test for sufficiency of the evidence and officers recovered 8.1 grams of methamphetamine *and* $2,150 in cash from a locked safe. 1 Wn. App. 2d at 277.

In both of these cases, the independent evidence was "'consistent with guilt and inconsistent with a[] hypothesis of innocence.'" *Brockob*, 159 Wn.2d at 329 (alteration in original) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660). The presence of coffee filters is not typically inconsistent with innocence, but the location of the coffee filters in Gonzales's backseat alongside ephedrine and their varying sizes, suggested the filters were not being used to brew coffee. *See id.* at 321. Further, a forensic scientist testified that "he had rarely seen a methamphetamine lab that did not use coffee filters." *Id.* at 322. Therefore, the presence of the coffee filters in the car, and the fact that Gonzales was collaborating with another individual to

procure more than the legal amount of ephedrine, was sufficient to support an inference that Gonzales intended to manufacture methamphetamine. *Id.* at 333.

In *Hotchkiss*, the majority reasoned that a large amount of cash in the defendant's safe "technically . . . is not inconsistent with innocence and also could support an inference that [the defendant] did not have an intent to deliver . . . . [because] the cash could have come from a source other than selling drugs." 1 Wn. App. 2d at 282-83. However, prima facie corroboration exists where "the independent evidence supports a 'logical and reasonable inference'" that the charged crime occurred. *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656). Where the State presented evidence that Hotchkiss stored over $2,000 in cash in a locked safe alongside methamphetamine, the logical and reasonable inference was that the cash and methamphetamine were connected. Although *Hotchkiss* relied more heavily on the court's finding of "'one additional factor, suggestive of intent,'" its conclusion still satisfied *Brockob*'s requirement that the logical and reasonable inference from the evidence be inconsistent with innocence. *Hotchkiss*, 1 Wn. App. 2d at 281 (quoting *Whalen*, 131 Wn. App. at 63).

In sum, under *Brockob* and subsequent cases applying its requirements, the corpus delicti of possession with intent to deliver requires evidence—in addition to the amount of the controlled substance—that supports a logical and reasonable inference of an intent to deliver. Under *Hotchkiss*, the evidence can be as little as one fact in addition to the amount of the controlled substance. The evidence must also be consistent with guilt and inconsistent with a hypothesis of innocence, a consideration unique to the corpus delicti analysis that is in tension with the principle that we draw all reasonable inferences in the light most favorable to the State.

B.      Evidence to Support Corpus Delicti for Intent to Deliver

Here, in addition to Sprague's possession of 9 to 10 grams of methamphetamine, officers recovered a homemade pipe, a metal container with methamphetamine residue, a scale, and a bundle of plastic grocery bags.

The amount of methamphetamine alone is insufficient to support an inference of intent to deliver. *Cobelli*, 56 Wn. App. at 925. The State does not argue that either the pipe or the metal container supports an inference that Sprague possessed methamphetamine with an intent to deliver it, and we agree. Instead, the State relies on the presence of a scale and a bundle of plastic grocery bags.

Sprague's possession of a scale could be consistent with both an intent to deliver and personal use. Mortensen testified that it is "not uncommon for a user or an addict to have a scale" for personal use. 1 VRP at 150. Although we review this issue de novo, the trial court also considered the scale to be evidence that was consistent with a hypothesis of mere possession.

The presence of plastic grocery bags could also be consistent with both an intent to deliver and personal use. Considering the evidence independent of Sprague's confession, the record does not clearly indicate that the plastic grocery bags were being used to package methamphetamine for delivery. The bags were found in the living room, the same room where the methamphetamine was found, and officers testified that while "[t]ypically" methamphetamine is packaged in small Ziploc-style bags, plastic grocery bags are also "commonly used" as packaging. 1 VRP at 95, 139. Individuals may tear or cut off a piece of the bag and then tie it up or melt its ends together. Yet, the officers all agreed that the plastic grocery bags in Sprague's apartment were not torn into small pieces or wrapped around methamphetamine. The grocery bags taken into evidence "were torn but

not [torn] into small pieces," "bundles of baggies . . . [that] were whole," and "full" rather than "ripped-up." 1 VRP at 103, 115, 150-51. Sprague was using one of the grocery bags as a garbage can liner.

The State argues that the combination of a significant amount of methamphetamine, a scale, and plastic grocery bags stored in the same room as the methamphetamine is sufficient to establish the corpus delicti of possession with intent to deliver. The State emphasizes that we must view the evidence in the light most favorable to the State and the evidence need only support a logical and reasonable inference of the facts sought to be proved. In prior cases, both a scale and packaging materials located near the controlled substances have been factors that weighed in favor of finding an intent to deliver.

But the corpus delicti analysis also requires us to consider whether the evidence is consistent with a hypothesis of innocence of the alleged crime. There must be sufficient evidence to corroborate the specific crime charged. So here, where the crime charged is possession with intent to deliver, we must consider whether the evidence is consistent with a hypothesis of mere possession. There was no evidence of a large amount of cash, safes, pay/owe sheets, weapons, or an exchange. In light of Mortensen's testimony that it is not uncommon for a scale to be employed for personal drug use, and testimony regarding the relatively good condition of the plastic grocery bags, the presence of the scale and grocery bags here is "no more indicative of an intent to deliver than . . . mere possession." *Cobelli*, 56 Wn. App. at 925.

The fact that officers have seen grocery bags used as packaging before is insufficient to support an inference that these grocery bags were being used as packaging. In *Cobelli*, the circumstances were insufficient to support an inference of an intent to deliver, even though the

defendant's behavior was "'real indicative of what [the officers had] seen before in the sales and purchase of drugs.'" 56 Wn. App. at 922. Similarly, in *Brockob*, the court held that "the mere assertion that Sudafed is *known to be used* to manufacture methamphetamine" was insufficient to support an inference of an intent to manufacture. 159 Wn.2d at 331-32. Unlike the coffee filters in Gonzales's backseat and the cash locked in Hotchkiss's safe, the bundle of grocery bags in Sprague's living room fails to support "a logical and reasonable inference of criminal activity *only*." *Whalen*, 131 Wn. App. at 63 (emphasis added). It is common for individuals to bundle plastic grocery bags in their homes and to use them as garbage can liners, whereas it is uncommon for individuals to carry multiple sizes of coffee filters in the backseats of cars.

The evidence here is insufficient to establish corpus delicti of the specific crime of possession with intent to deliver. *Aten*, *Brockob*, and *Cardenas-Flores* require independent corroborating evidence that is inconsistent with innocence of the specific crime charged, and the independent evidence here is consistent with a hypothesis of mere possession.

Sprague's incriminating statements were improperly admitted. We must therefore turn to whether there was sufficient evidence, absent the incriminating statements, to support Sprague's conviction.

## II. SUFFICIENCY OF THE EVIDENCE

Sprague claims that "aside from his statements, the evidence showed that [he] possessed methamphetamine for his personal use." Br. of Appellant at 14. Viewing the evidence in the light most favorable to the State, we disagree and conclude that the remaining evidence was sufficient to support Sprague's conviction beyond a reasonable doubt.

The test for determining the sufficiency of the evidence is whether "any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *Cardenas-Flores*, 189 Wn.2d at 265; *see also Brockob*, 159 Wn.2d at 338, 341 (applying this test after excluding the defendant's confession for failure to establish corpus delicti).[4] A court's decision on the issue of corpus delicti "permeates any conclusion on sufficiency of the evidence." *Aten*, 130 Wn.2d at 667. But evidence that was insufficient to establish corpus delicti may nonetheless be sufficient to sustain a conviction where the defendant's incriminating statement "did not add significantly to the quantum of evidence against him." *Brockob*, 159 Wn.2d at 341; *see also Hotchkiss*, 1 Wn. App. 2d at 286 (Worswick, J., concurring).

When the charge is possession with intent to deliver, evidence of intent is typically circumstantial. *State v. Davis*, 79 Wn. App. 591, 594, 904 P.2d 306 (1995). Circumstantial evidence is not any less reliable or probative than direct evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "However, inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). Evidence that a defendant had the intent to deliver must be "sufficiently compelling" that the intent "'is plainly indicated as a matter of logical probability.'" *Davis*, 79 Wn. App. at 594 (internal quotation marks omitted) (quoting *State v. Kovac*, 50 Wn. App. 117, 120, 747 P.2d 484 (1987)).

---

[4] Neither party argues, nor do we address, whether admission of the incriminating statements was harmless error.

"Mere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). Further, an officer's opinion on what quantity of a controlled substance is "normal for personal use" cannot alone support an inference of intent to deliver. *State v. Hutchins*, 73 Wn. App. 211, 217, 868 P.2d 196 (1994). In reviewing the evidence necessary to convict in possession with intent cases, the *Brockob* court affirmed that "'*at least one additional factor*, suggestive of intent, must be present.'" 159 Wn.2d at 337 (quoting *State v. Moles*, 130 Wn. App. 461, 466, 123 P.3d 132 (2005)).

The presence of a scale is relevant circumstantial evidence suggesting an intent to deliver, although it is usually considered in conjunction with other circumstantial evidence that is similarly suggestive of such intent. For example, in *O'Connor*, Division Three relied on a large amount of marijuana, the presence of a scale, and "the sophistication of the [defendant's] grow operation" in holding that the evidence was sufficient to sustain a conviction for possession with intent to deliver. 155 Wn. App. at 291. Similarly, in *State v. Lane*, 56 Wn. App. 286, 297-98, 786 P.2d 277 (1989), Division Three affirmed a conviction for possession with intent to deliver based on evidence of a large amount of cocaine, the presence of a scale, and the presence of a large amount of cash.

The presence of packaging material is also relevant circumstantial evidence suggesting an intent to deliver. In *State v. Simpson*, 22 Wn. App. 572, 575, 590 P.2d 1276 (1979), Division One relied, in part, on evidence that balloons were found on the defendant's person and under the defendant's bed because "[b]alloons are commonly used for the packaging, transportation and sale of heroin." And in *Hutchins*, Division Three noted the fact that "[t]here was no packaging material"

19

as one factor influencing the court's decision to reverse a conviction for possession with intent to deliver. 73 Wn. App. at 218.

Here, the officers testified that Sprague possessed a total of between 9 and 10 grams of methamphetamine, a significant amount. Based on the officers' testimony about typical doses being between one tenth of a gram and one half of a gram, Sprague possessed between 18 and 100 doses. That amount supports an inference of an intent to deliver, but "'at least one additional factor'" must be present. *Brockob*, 159 Wn.2d at 337 (emphasis omitted) (quoting *Moles*, 130 Wn. App. at 466).

Even when the influence of Sprague's confession is removed, the presence of a scale and plastic grocery bags are additional factors that courts have held suggest an intent to deliver. *See O'Connor*, 155 Wn. App at 291; *Lane*, 56 Wn. App. at 297-98; *Simpson*, 22 Wn. App. at 575; *cf. Hutchins*, 73 Wn. App. at 218. And unlike the corpus delicti analysis, the sufficiency of the evidence analysis does not involve evaluation of hypotheses of innocence. Here, we must resolve all inferences in favor of the State without considering hypotheses supporting mere possession. The scale and the packaging materials were located in the same room as an amount of drugs that exceeded an amount for personal use. Thus, despite the insufficient evidence under the corpus delicti test, there was sufficient evidence to support Sprague's conviction under the sufficiency of the evidence test without Sprague's incriminating statements.

### III.  MOTION TO CONTINUE TRIAL

Sprague also argues that the trial court violated his constitutional right to a fair trial when it denied his request for a continuance. We disagree.

"[T]he decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court." *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). "We will not disturb the trial court's decision unless the appellant or petitioner makes 'a clear showing . . . [that the trial court's] discretion [is] manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* at 272-73 (alterations in original) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Sprague asked for a continuance when the State disclosed, on the morning of trial, that the officers testifying in Sprague's case had completed a controlled buy from him prior to executing the warrant underlying the present case. The prosecutor told Sprague that if he pleaded guilty instead of going to trial, then the State would not file a new charge based on the controlled buy.

Although Sprague was surprised by information regarding a prior controlled buy before trial, the new information was not material to this case. The State explained that it was not seeking to admit this fact into evidence because the case law is "pretty clear that prior deliveries are not admissible to prove intent." 1 VRP at 32. The prosecutor "hadn't intended on using [the information] as anything but essentially leverage in negotiating the current, pending case." *Id.* Given that the State did not seek to admit this evidence at trial, the court's decision to deny a continuance was not "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Downing*, 151 Wn.2d at 272-73 (quoting *Carroll*, 79 Wn.2d at 26).

Further, the trial court delayed the trial long enough to ensure Sprague's right to competent counsel in plea bargaining was protected. To allow for informed consideration of the State's new plea offer, the trial court granted a "quick break" and asked the State to obtain the probable cause report for defense counsel. 1 VRP at 33. The trial court later granted another short recess so that

defense counsel could do additional research, and the trial court delayed swearing in the jury until after lunch so that defense counsel could use the lunch hour to confer with her client. The trial court's decision to grant multiple short recesses rather than a continuance was within its sound discretion and did not violate Sprague's right to a fair trial.

IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Sprague also argues that he was deprived of his right to effective assistance of counsel when the State presented new information on the morning of trial and the trial court refused to grant a continuance because his counsel could not fully investigate the controlled buy. Sprague argues this impacted his counsel's ability to present a defense and assist in plea negotiations. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). Washington has adopted *Strickland*'s two-pronged test requiring defendants to show both deficient performance by counsel and resulting prejudice. *Estes*, 188 Wn.2d at 457-58 (citing *Strickland*, 466 U.S. at 687). A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We review ineffective assistance of counsel claims de novo. *Estes*, 188 Wn.2d at 457. In evaluating a claim of ineffective assistance, "we examine the advocacy of the defendant's attorney and determine if that advocacy was commensurate with that of a reasonably prudent attorney." *State v. Greiff*, 141 Wn.2d 910, 924-25, 10 P.3d 390 (2000). The inquiry is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.

The right to effective assistance of counsel extends to plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *State v. Edwards*, 171 Wn. App. 379, 393-94, 294 P.3d 708 (2012). "[A]t the very least, counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." *State v. A.N.J.*, 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010).

In plea bargaining, the State has broad discretion. This discretion may not be used in a manner that offends "'fundamental conceptions of justice'" and violates a defendant's right to due process. *State v. Moen*, 150 Wn.2d 221, 226, 76 P.3d 721 (2003) (internal quotation marks omitted) (quoting *State v. Cantrell*, 111 Wn.2d 385, 389, 758 P.2d 1 (1988)). "However, a condition insisted on by the State that requires a defendant to give up a constitutional right does not, by itself, violate due process." *Id.* at 230. In *State v. Shelmidine*, 166 Wn. App. 107, 111, 269 P.3d 362 (2012), we rejected the argument that "conditional terms of the State's plea offer prevented defense counsel from providing effective assistance of counsel." There, the offer inhibited the defendant's right to request an informant's identity, and we concluded that "waivers are necessary components of plea agreements." *Id.* at 116 (citing *Moen*, 150 Wn.2d at 230-31).

Here, the State did not seek to admit any new evidence at the scheduled trial, so the disclosure of the prior controlled buy could not impact the trial outcome, only the pretrial plea negotiations. The Sixth Amendment requires that, to adequately assist in plea negotiations, counsel must "reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial." *A.N.J.*, 168 Wn.2d at 111. Defense counsel was able to review the probable cause statement underlying the new plea offer with Sprague, conduct research on how a

new charge could impact his sentencing risk, and discuss options with him. Sprague fails to show how his counsel's representation under these circumstances was deficient. He does not articulate any specific incompetent advice given by his counsel, and he fails to show a reasonable probability that the outcome of the proceedings would have been different if his counsel had given different advice.

Sprague also contends that his counsel was "unable" to sufficiently investigate the information disclosed by the State the morning of trial and, therefore, he was deprived of the ability to present a defense. Br. of Appellant at 27. To the extent Sprague is arguing that the State interfered with his Sixth Amendment right to counsel and violated his right to due process or deprived him of his right to present a defense, that argument fails as well because the State has broad discretion in conducting plea negotiations. *See Moen*, 150 Wn.2d at 230-31. Here, the State's strategic attempt to encourage settlement by offering to resolve a new potential charge along with the charge on which Sprague was about to go to trial does not rise to the level of a due process violation, especially in light of the State's wide latitude in plea negotiations.

Sprague has failed to establish that his counsel's performance was deficient, and the State did not violate Sprague's right to due process by depriving him of his Sixth Amendment right to the effective assistance of counsel.[5]

---

[5] Because we hold that the trial court committed a single error, we need not address Sprague's argument that cumulative errors deprived him of a fair trial.

CONCLUSION

We hold that the trial court erred in its corpus delicti analysis and improperly admitted Sprague's incriminating statements. But even without the statements, there was sufficient evidence to support Sprague's conviction for possession with intent to deliver methamphetamine. We reject the remainder of Sprague's arguments and affirm his conviction.

Glasgow, J.

I concur:

Worswick, P.J.

Melnick, J.P.T. (concurrence)—I respectfully concur with the majority affirming Victor Sprague's conviction, but disagree with its conclusion that Sprague's confession should have been excluded. Sufficient corroborating evidence of the confession exists; therefore, the corpus delicti rule has been satisfied.

I.      CORPUS DELICTI GENERALLY

In Washington, corpus delicti is a sufficiency of the evidence rule, not merely an evidence rule. *State v. Cardenas-Flores*, 189 Wn.2d 243, 256-57, 401 P.3d 19 (2017). Although it is a sufficiency of the evidence rule, it does not displace the sufficiency of the evidence rule first enunciated in Washington in *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980), which is utilized when a defendant challenges the overall sufficiency of the evidence to support a conviction. That rule states that we view the evidence in the light most favorable to the State and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Green*, 94 Wn.2d at 221. All reasonable inferences are drawn in favor of the State and against the defendant. It admits the truth of the State's evidence and all reasonable inferences. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019).

"[T]he underlying purpose of corpus delicti is to prevent convictions based solely on confessions." *Cardena-Flores*, 189 Wn.2d at 260. If the State fails to satisfy corpus delicti and thus fails to prove each element of the crime, the conviction must be reversed and dismissed. A conviction cannot be based on an uncorroborated confession. *Cardena-Flores*, 189 Wn.2d at 260. If a confession is admitted in contravention of corpus delicti, the conviction may be upheld if sufficient evidence supports the conviction. *Cardena-Flores*, 189 Wn.2d at 262. "In assessing whether there is sufficient evidence of the *corpus delicti*, independent of a defendant's statements,

this Court assumes the truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State." *State v. Aten*, 130 Wn.2d 640, 658, 927 P.2d 210 (1996).

This series of rules means that there must be sufficient evidence to corroborate a defendant's confession before it is deemed admissible. It does not mean that there must be sufficient evidence to sustain a conviction beyond a reasonable doubt.

Confessions are admissible if the State presents prima facie evidence of the corpus delicti. "'Prima facie corroboration . . . exists if the independent evidence supports a logical and reasonable inference of the facts' the State seeks to prove." *Cardenas-Flores*, 189 Wn.2d at 258 (internal quotation marks omitted) (quoting *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006)). Independent evidence of the corpus delicti need not be proven beyond a reasonable doubt or by a preponderance of the evidence. *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951). "*Prima facie* in this context means there is 'evidence of sufficient circumstances which would support a logical and reasonable inference' of the facts sought to be proved." *Aten*, 130 Wn.2d at 656 (quoting *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995)). "[T]he admission of a confession under corpus delicti is necessarily considered in light of *all the evidence at trial*, not simply the foundation laid when the confession is offered." *Cardenas-Flores*, 189 Wn.2d at 262.

The body of the crime is called the corpus delicti. *Brockob*, 159 Wn.2d at 327. It contains two elements: an "'injury or loss'" and "'someone's criminal act as the cause.'" *Cardena-Flores,* 189 Wn.2d at 252 (quoting *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986)). "Proof of the identity of the person who committed the crime is not part of the corpus

delicti, which only requires proof that a crime was committed by someone." *Corbett*, 106 Wn.2d at 574.[6, 7]

The corpus delicti of homicide is a death caused by a criminal act or a death by unnatural causes. *Aten*, 130 Wn.2d at 658. However, there need not be proof of a causal relation between the death and the accused. *State v. Lung*, 70 Wn.2d 365, 371, 423 P.2d 72 (1967). The corpus delicti of arson is a burning object caused by a person's willful act and not because of natural or accidental causes. *State v. Pienick*, 46 Wash. 522, 525, 90 P. 645 (1907). The corpus delicti of larceny by possession is property that has been stolen. *State v. Martin*, 94 Wash. 313, 315, 162 P. 356 (1917); *State v. DePriest*, 16 Wn. App. 824, 825, 560 P.2d 1152 (1977).

Although our courts have stated that the corpus delicti of possession with intent to deliver is the same as the elements of the crime, I do not believe our courts have ever truly examined this issue. I also think this stated conclusion is inconsistent with what our courts have written about corpus delicti.

II.    INTENT NOT PART OF THE CORPUS DELICTI

Based on our precedent, including recent pronouncements, I do not believe the corpus delicti of possession with intent to deliver includes the mens rea of intent to deliver. This conclusion is in accord with Washington's rule that even though "the State must establish the

---

[6] As pointed out in *State v. Young*, 196 Wn. App. 214, 222, 382 P.3d 716 (2016), the corpus delicti need not be established by independent evidence of every element of the charged crime. The elements of the crime are different from the corpus delicti of the crime. *State v. Angulo*, 148 Wn. App. 642, 653, 200 P.3d 752 (2009).

[7] An exception to the identity requirement applies in crimes such as attempt, conspiracy, perjury, and reckless or drunken driving which do not require the first corpus delicti element, injury or loss. *State v. Smith*, 115 Wn.2d 775, 781, 801 P.2d 975 (1990).

mental element of the crime beyond a reasonable doubt to sustain a conviction, mens rea is not required to satisfy corpus delicti." *Cardena-Flores*, 189 Wn.2d at 263-64. Corpus delicti does not require the State to present independent evidence of the mens rea element of a crime where that element merely establishes the degree of the crime. *State v. Boyer*, 200 Wn. App. 7, 15, 401 P.3d 396 (2017).

> [T]he requirements in a homicide case are the fact of death and a criminal agency as the cause of death. There is no requirement that the appropriate mental state (intent, recklessness, negligence), premeditation (in a first degree murder charge), or identity of the killer, all of which would have to be established beyond a reasonable doubt to prove a case, be established in order to admit an incriminating statement. In essence, the gravamen of a homicide case is a dead body and a non-natural cause of death.

*State v. Angulo*, 148 Wn. App. 642, 656, 200 P.3d 752 (2009) (internal citations omitted).

In *State v. C.M.C.*, 110 Wn. App. 285, 287, 40 P.3d 690 (2002), the court held that, "[t]he corpus delicti of taking a motor vehicle without permission does not require evidence independently establishing the mens rea element of knowledge." The evidence, independent of the confession, showed that the vehicle was taken without permission and that the defendant rode in it. *C.M.C.*, 110 Wn. App. at 289-90. The court held that the trial court properly admitted the confession. *C.M.C.*, 110 Wn. App. at 290.

In *State v. Mason*, 31 Wn. App. 41, 47, 639 P.2d 800 (1982), the State charged the defendant with assault in the first degree by intending to commit a felony. The court held that the intent of the accused, in that case the intent to commit a felony, was not part of the corpus delicti. *Mason*, 31 Wn. App. at 48. Rather, the corpus delicti encompassed an assault on the victim and an assault with a deadly weapon. *Mason*, 31 Wn. App. at 48. "The mental element of the felony charged need not be proved by independent evidence prior to trial use of a defendant's confession when that element of the crime charged provides merely the degree of the generic crime charged.

29

That element may be supplied by use of the confession in combination with any independent evidence used to establish the corpus delicti." *Mason*, 31 Wn. App. at 48.

Based on our jurisprudence, the corpus delicti for possession of a controlled substance should be the same as it is for possession of a controlled substance with intent to deliver. The "intent to deliver" element is the mens rea of the crime and under the most recent pronouncement of the Supreme Court in *Cardena-Flores*, corpus delicti does not include the mens rea. In addition, by adding this mens rea element, the corpus delicti encompasses the degree of the crime, which is contrary to well-settled law.

This proposed rule is consistent with other jurisdictions, including Pennsylvania. In *Commonwealth v. Daniels*, 422 A.2d 196, 199 (Pa. Super. Ct. 1980), the court held that the crimes of possession and possession with intent to deliver have the same corpus delicti. It reasoned that the criminal responsibility of the defendant does not form part of the corpus delicti. *Daniels*, 422 A.2d at 199.

In *Commonwealth. v. DiSabatino*, 581 A.2d 645, 647 (Pa. Super. Ct. 1990), the appellant argued that the Commonwealth proved a corpus delicti only for the crime of possession of a controlled substance and not for possession with intent to deliver. The court did not utilize Washington's rationale; however, the court disagreed with the appellant and based its reasoning on the "closely related" crimes exception. *DiSabatino*, 581 A.2d at 647. "[W]here two crimes are closely related and have arisen out of the same transaction, the establishment of the corpus delicti for one of them is sufficient to permit a receipt of the defendant's admission or confession even though it implicates him in the other crime as well." *DiSabatino*, 581 A.2d at 647.

In *DiSabatino*, the court ruled that the crimes of possession of a controlled substance and possession with intent to deliver were closely related because they shared a common element of possession and arose out of the same incident. 581 A.2d at 648. Once the possession of the drugs had been independently established, "there no longer existed a danger that a confession would lead to a conviction where no crime had been committed. *DiSabatino*, 581 A.2d at 648. In so ruling, the court did not consider the "intent to deliver" element in determining that the corpus delicti had been satisfied.

In *Commonwealth v. Stokes*, 311 A.2d 714 (Pa. Super. Ct. 1973), the government charged the defendant with the misdemeanor of pointing a firearm at police officers and with the felony of attempted murder. The court upheld the admission of the defendant's statement that he had pulled the trigger but that the gun had not fired. *Stokes*, 311 A.2d at 715. It rejected the defendant's argument that his statement should have been excluded because the government had established the corpus delicti only for the firearms offense and not for attempted murder. It reasoned that, "[t]he two crimes charged arose from a single transaction, and had in common the element of pointing a firearm at someone. Perhaps if the two crimes were distinct, in time or nature or both, the case would be different; whether it would need not be decided." *Stokes*, 311 A.2d at 715-16. As in Washington, the court in *Stokes* did not consider the mens rea of the crime in determining if the corpus delicti had been sufficiently corroborated.

Along these lines, I believe that the majority's reliance on black letter law that the confession must go to the crime charged is misplaced. Our State says it adheres to this rule, but a close examination of the rule shows that we do not. As a hypothetical, a defendant's confession admitting to killing a person by accidentally pushing the person into traffic, would be admissible

in a trial where the State charged the defendant with premeditated murder. The reasons are that the corpus delicti of murder is a death by unnatural causes, and because we do not look at the mens rea element. *See Angulo*, 148 Wn. App. at 656. Even though the defendant's confession in this hypothetical situation only admitted to manslaughter, it would be admissible in a murder, i.e. intentional killing case.

As it relates to the present case, we do not look at the "intent to deliver" element of the crime when determining if the corpus delicti has been established, because it is the mens rea element. I believe the State has sufficiently corroborated Sprague's confession, it has proven the corpus delicti, and the trial court did not err in admitting it.

III.     SUFFICIENT EVIDENCE PROVES THE CORPUS DELICTI

Even assuming that the mens rea element, i.e. intent to deliver, is part of the corpus delicti, I believe the State has provided sufficient evidence to support it. The majority's reliance on a belief that Sprague's confession is inadmissible because the corroborating evidence is equally consistent with guilt and innocence is, in my opinion, improper. It also fails to consider that we look at the evidence and all its reasonable inferences in the light most favorable to the State. The application of this rule requires closer examination and clarification of its history and its uses. It evolved from a rule about how a jury should view circumstantial evidence, but in the context of corpus delicti, the courts have not adapted the nuances of that rule.

The language at issue states that the independent evidence "'must be consistent with guilt and inconsistent with a[] hypothesis of innocence.'" *Brockob*, 159 Wn.2d at 329 (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660). This language has been favorably cited in *Cardenas-Flores* and other recent cases.

32

It is first found in *State v. Pagano*, 7 Wash. 549, 553, 35 P. 387 (1893), where the court set aside the defendant's conviction for murder in the first degree based on insufficient evidence. All of the evidence was circumstantial. The court determined that all the "circumstances [were] explainable upon some other reasonable hypothesis than the guilt of the defendant, but there were other circumstances which appeared in the proofs which went to show that there was at least an equal probability that another than the defendant had committed the crime." *Pagano*, 7 Wash. at 553.

The language at issue next appeared in *State v. Harras*, 25 Wash. 416, 420, 65 P. 772 (1901), where the court affirmed the defendant's conviction for cattle stealing. At trial, the court instructed the jury on the difference between direct or positive evidence and circumstantial evidence. *Harras*, 25 Wash. at 420-21. The instruction stated that circumstantial evidence can be the basis of the conviction if it established guilt beyond a reasonable doubt and if it was consistent with the hypothesis of guilt and not consistent with the hypothesis of innocence. *Harras*, 25 Wash. at 421. In other words, if the jury believed that, "all the evidence can be reconciled with the assumption of his guilt, and cannot be reconciled with the assumption of his innocence, and produces in the minds of the jury an abiding conviction to a moral certainty of his guilt, . . . it is the imperative duty of the jury, under the law and under their several oaths, to render a verdict finding him guilty, and they would violate their oaths if they should fail to do so, just as they would if it were all direct and positive evidence." *Harras*, 25 Wash at 418-19. It is up to the jury to decide what evidence it believed the State had circumstantially proven. It involves a question of fact.

As is evident in *Harras*, even if circumstantial evidence could be consistent with innocence, if the trier of fact determined that it could be reconciled with the defendant's guilt beyond a reasonable doubt, then the verdict would be upheld.

In *State v. Pienick*, 46 Wash. 522, 528, 90 P. 645 (1907), the court reversed the defendant's conviction for arson. It determined that insufficient evidence existed to support the conviction because the circumstantial evidence did not show the defendant had the motive or the means to set the fire. *Pienick*, 46 Wash. at 528. The defendant argued that the fire started as a result of a defect in electrical wiring, regardless of the testimony that others smelled kerosene on the night of the fire. *Pienick*, 46 Wash. at 524, 528. The court then stated that, "proof of the single fact that a building has been burned does not show the corpus delicti of arson." *Pienick*, 46 Wash. at 525. The defendant did not confess to the crime and the case does not involve the admission of a confession in violation of corpus delicti. *Pienick* is a sufficiency of the evidence case that would be governed today by the standard enunciated in *Green.*

Subsequently, the Supreme Court utilized the language cited above to formulate a rule relating to circumstantial evidence. "The rule with regard to circumstantial evidence is that all the circumstances relied upon must be proven beyond a reasonable doubt. They must all be consistent with each other and with the guilt of the defendant and they must be inconsistent with any reasonable hypothesis of innocence." *State v. Payne*, 25 Wn.2d 407, 418, 171 P.2d 227, 175 P.2d 494 (1946). The language had everything to do with how to interpret circumstantial evidence and nothing to do with corpus delicti.

Eventually, the language found its way into a jury instruction regarding the weight and nature to be afforded circumstantial evidence.

> The facts and circumstances relied upon should be consistent with each other, and with the guilt of the defendant. They should be inconsistent with any reasonable theory of innocence. They should be of such character as to exclude every reasonable hypothesis other than that of guilt. Circumstantial evidence meeting these requirements is entitled to the same weight as direct evidence.

*State v. Cerny*, 78 Wn.2d 845, 850, 480 P.2d 199 (1971), *vacated in part by Cerny v. Washington* 408 U.S. 939, 92 S. Ct. 2873, 33 L. Ed. 2d 761 (1972). Whether or not circumstantial evidence satisfied this test involved a question of fact for the jury. *Cerny*, 78 Wn.2d at 849; *State v. Passafero*, 79 Wn.2d 495, 499, 487 P.2d 774 (1971).

In *State v. Gosby*, 85 Wn.2d 758, 767, 539 P.2d 680 (1975), the court explicitly rejected the above-stated "multiple hypothesis circumstantial evidence instruction" that it had previously approved and required. That language stated, "If circumstantial evidence is considered by you, it should be consistent with guilt and it should be inconsistent with innocence." *Gosby*, 85 Wn.2d at 764. Instead it adopted a rule that circumstantial evidence is as reliable as direct evidence. *Gosby*, 85 Wn.2d at 766.[8]

The current rule on circumstantial evidence gives equal weight to direct and circumstantial evidence. *Scanlan*, 193 Wn.2d at 771. It states that, "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

---

[8] It is important to note that our courts have upheld convictions based on circumstantial evidence even where evidence of "innocence" went to the jury. One example is *State v. Donckers*, 200 Wash. 45, 93 P.2d 355 (1939). That case followed the former rule on interpreting circumstantial evidence, which allowed the jury to interpret the evidence as a question of fact. *Donckers*, 200 Wash. at 50. "[I]t is for the jury to say whether it excludes every reasonable hypothesis consistent with the innocence of the accused." *Donckers*, 200 Wash. at 50

The language at issue largely disappeared from our jurisprudence until the court reintroduced it in *Aten*. *Aten* relied on *Lung*, where the court discussed the admission of the defendant's confession and the establishment of the corpus delicti. *Lung*, 70 Wn.2d at 370. Only when it discussed circumstantial evidence did the court say, "[t]he circumstantial evidence must be consistent with guilt and inconsistent with an hypotheses of innocence." *Lung*, 70 Wn.2d at 372. As noted above, this view of circumstantial evidence was consistent with the law as it existed at the time; however, this interpretation of circumstantial evidence was rejected eight years later in *Gosby*.

Interestingly, in *Lung*, the court said that "proof of the corpus delicti and the identity of the perpetrator of the offense must resolve the guilt of the defendant beyond a reasonable doubt." 70 Wn.2d at 372. It also stated that a motion alleging insufficient evidence admits the truth of the evidence as well as all reasonable inferences that can be drawn from it. *Lung*, 70 Wn.2d at 372. Additionally, the evidence will be interpreted against the moving party and in a light favoring the opposing party. *Lung*, 70 Wn.2d at 372.

Returning to *Aten*, it is essential to understand that the court stated that in analyzing whether there is sufficient independent evidence to support the corpus delicti of the crime, it "assumes the truth of the State's evidence and all reasonable inference from it in a light most favorable to the State." *Aten*, 130 Wn.2d at 658; *see also State v. Hummel*, 165 Wn. App. 749, 759, 266 P.3d 269 (2012).

I think this historical perspective is important because it appears that the former concept of interpreting circumstantial evidence has been conflated with the concept of corpus delicti. This view is supported by our case law.

In *Brockob*, the court held that the corpus delicti of possession with intent to manufacture was established as to defendant Gonzales, one of the three defendants involved in the case. 159 Wn.2d at 322. The officers had recovered ephedrine and two different sizes of coffee filters from the backseat of Gonzales's car. *Brockob*, 159 Wn.2d at 321. Ephedrine and the coffee filters are both used in the manufacture of methamphetamine. However, there are any number of innocent explanations for having these items. Nonetheless, the court said the corpus delicti had been established.

The majority in the present case, however, says that "the location of the coffee filters in Gonzales's backseat alongside ephedrine and their varying sizes, suggested the filters were not being used to brew coffee." Majority at 13. The use of the term "suggested" is contrary to the rule used by the majority, i.e. that the evidence is inconsistent with innocence. It also does not view the evidence in the light most favorable to the State.

The majority in the present case, and the court in *Brockob*, acknowledged that the evidence could be interpreted in multiple ways, yet it chose to view it as consistent with guilt and inconsistent with innocence. But I do not think the majority reviewed the sufficiency of the corpus delicti in the light most favorable to the State as required by *Aten.*

The original use of the language at issue was to guide the jury in how it made factual determinations. We should still use it in that fashion in determining if there is sufficient evidence to determine if the corpus delicti has been established so that Sprague's confession is admissible.[9]

---

[9] I also want to take the opportunity to state my belief that the majority's reliance on *Aten* is misplaced. There, the court held that the corpus delicti had not been proved because the cause of death was disputed. It could have been by unnatural causes or by sudden infant death syndrome (SIDS). *Aten*, 130 Wn.2d at 660. *Aten* is distinguishable from our case because it involved the

When viewing the evidence against this framework and our well-established rules, we assume the truth of the State's evidence, view it in the light most favorable to the state, and then see if it is consistent with guilt and inconsistent with innocence. Viewed in this light, I think the court properly admitted Sprague's confession.

IV.     SUFFICIENCY FOR CORPUS DELICTI VS. FOR CONVICTION

In this case, the majority concludes that insufficient evidence supports the corpus delicti, but that sufficient evidence supports the conviction in this case. In making this determination, the majority relies on the same evidence. There is no other additional evidence. This anomaly requires some discussion.

It is undisputed that Sprague possessed methamphetamine. The majority concludes that the large quantity of methamphetamine coupled with a digital scale and plastic grocery bags is insufficient to establish the corpus delicti. It relies on the rule established for sufficiency of the evidence to support a conviction. *See State v. Hotchkiss*, 1 Wn. App. 2d 275, 280, 404 P.3d 629 (2017); *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). It recognizes that the corpus delicti need not be proved beyond a reasonable doubt or even by a preponderance of the evidence.

The evidence showed that the quantity of methamphetamine the officers discovered, approximately 9 to 10 grams, was consistent with an intent to deliver. A person normally uses between .1 and .5 grams for personal use, a couple of times a day. The scale was indicative of either dealing or personal use. People commonly package methamphetamine in torn pieces of

_____

cause of death and not the mens rea element of the crime. A genuine dispute existed in *Atens* as to the cause of death, one of which involved innocence.

38

grocery bags. The bags in Sprague's house were torn but not into small pieces. Sprague admitted to purchasing a half ounce of methamphetamine every few days.[10] He used some and sold some. Sprague also admitted to using plastic grocery bags to package the methamphetamine.

Even assuming that the corpus delicti of the crime of possession with intent to deliver is the same as the elements of the crime, the direct evidence shows that Sprague possessed 9 to10 grams of methamphetamine, a digital scale, and grocery bags that are commonly used for packaging methamphetamine. The circumstantial evidence shows that the amount in question is greater than is normally possessed for personal use. The circumstantial evidence also shows the bags were torn so they could be used for packaging the methamphetamine, which is why Sprague had a scale. It also shows that the police arrived before Sprague packaged the drug. I believe that this evidence is sufficient to independently corroborate that Sprague possessed the methamphetamine with an intent to deliver it.

Because there is no direct evidence of Sprague's intent, other than his confession, the majority is basically saying that the circumstantial evidence of Sprague's intent points towards innocence.[11]

In assessing both the sufficiency of the evidence to support the corpus delicti and the sufficiency of the evidence to support the conviction, it is undisputed that we look at the evidence in the light most favorable to the State, and we take all reasonable inferences from the evidence. In the latter situation we see whether a reasonable juror could find guilty beyond a reasonable doubt. In the former situation we rely on a standard below probable cause. Assuming the truth of

---

[10] One half ounce of methamphetamine is approximately 14 grams.

[11] It is important to keep in mind that Sprague was not innocent. Nobody questions the fact that he illegally possessed a controlled substance.

the State's evidence and all of its reasonable inferences in a light most favorable to the State, I disagree with the majority that the same evidence can support a conviction beyond a reasonable doubt, but that it cannot establish the corpus delicti utilizing a lower standard of proof. This result simply makes no sense to me.

For the foregoing reasons, I respectfully concur with the result.

_____
Melnick, J.P.T.