126 P.3d 55 (2005)
131 Wash.App. 58
STATE of Washington, Respondent,
v.
Victor Albert Lyle WHALEN, Appellant.
No. 31931-4-II.
Court of Appeals of Washington, Division 2.
December 28, 2005.
*56 Thomas Edward Doyle, Attorney at Law, Hansville, WA, Patricia Anne Pethick, Attorney at Law, Tacoma, WA, for Appellant.
James C. Powers, Thurston County Prosecuting Attorney Ofc., Olympia, WA, for Respondent.
VAN DEREN, A.C.J.
¶ 1 Victor Albert Lyle Whalen appeals his conviction for unlawful possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine, RCW 69.50.440. Whalen argues that (1) under the corpus delicti rule, the trial court should have granted his motion to suppress his statements made to an Olympia police officer; (2) the evidence is insufficient to support his conviction; (3) the prosecutor's closing argument was improper; and (4) his defense counsel was ineffective. Whalen asserts numerous other arguments in his Statement of Additional Grounds for Review (SAG).[1] We reverse and vacate his conviction because the State had insufficient independent corroborative evidence of intent to manufacture methamphetamine.

FACTS
¶ 2 On October 24, 2003, Whalen entered a Target® store in Olympia. Store security observed him remove seven boxes of nasal decongestant containing pseudoephedrine from a shelf and place them in his cart.[2] Whalen then walked to another section of the store, concealed the boxes of pseudoephedrine in another box containing an unrelated product, and exited the store. Approximately thirty minutes to one hour later, Whalen returned to the store and walked to the aisle where he had concealed the pseudoephedrine. He removed the pseudoephedrine from its hiding place, concealed it in his shirt, and walked toward the store's exit. After he passed the store's registers without paying for the items, store security asked him to stop. Whalen ran out of the store where he was tackled and eventually detained by store security.
¶ 3 After handcuffing Whalen, store security escorted him to the store's security office and removed six of the seven boxes of pseudoephedrine from Whalen's shirt. The store's security manager photographed the pseudoephedrine and prepared a report on the incident.
¶ 4 Store security contacted the Olympia Police Department regarding the incident and Officer Lyle Schaeffer responded. *57 Schaeffer advised Whalen of his Miranda[3] rights. Whalen indicated that he understood his rights and Schaeffer began questioning him. Specifically, Schaeffer said, "We both know why people take Sudafed®," and Whalen responded, "[Y]es." Report of Proceedings (RP) (May 17-18, 2004) at 80. Schaeffer then asked Whalen if he was a "cook" and Whalen explained that he was not. RP at 80. Schaeffer then asked who the cook was and Whalen responded with the name of a third party. He further explained that he was obtaining the pseudoephedrine for the third party to satisfy a marijuana debt owed to the third party.
¶ 5 At that point, Schaeffer patted Whalen down and discovered the seventh box of pseudoephedrine. All seven boxes of pseudoephedrine were returned to the store and were not taken into evidence by the Olympia Police Department.
¶ 6 On October 29, 2003, the State charged Whalen with one count of unlawful possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine, contrary to RCW 69.50.440, and one count of second degree robbery, contrary to RCW 9A.56.210. The State later amended the information eliminating the robbery charge.
¶ 7 During a CrR 3.5 hearing, Whalen stipulated to his responses to Schaeffer's questions prior to being taken to the Olympia Police Department. A jury trial commenced that same day, resulting in a guilty verdict. Whalen timely appealed.

ANALYSIS

I. Corpus Delicti Rule

¶ 8 Whalen argues that the trial court should have granted his motions to suppress his admissions to Schaeffer and dismissed the charge of possession with intent to manufacture under the corpus delicti rule. More specifically, he contends that the lack of sufficient independent evidence corroborating his admissions to Schaeffer warranted their exclusion at trial.
¶ 9 The confession or admission of a defendant charged with a crime cannot be used to prove the defendant's guilt in the absence of independent evidence corroborating that confession or admission.[4]State v. Aten, 130 Wash.2d 640, 655-56, 927 P.2d 210 (1996). The State has the burden of producing evidence sufficient to satisfy the corpus delicti rule. State v. Riley, 121 Wash.2d 22, 32, 846 P.2d 1365 (1993). If sufficient corroborative evidence exists, the confession or admission of a defendant may be considered along with the independent evidence to establish a defendant's guilt. Aten, 130 Wash.2d at 656, 927 P.2d 210.
¶ 10 To be sufficient, independent corroborative evidence need not establish the corpus delicti, or "body of the crime," beyond a reasonable doubt, or even by a preponderance of the evidence. Riley, 121 Wash.2d at 32, 846 P.2d 1365. Rather, independent corroborative evidence is sufficient if it prima facie establishes the corpus delicti. State v. Smith, 115 Wash.2d 775, 781, 801 P.2d 975 (1990). Prima facie in this context means evidence of sufficient circumstances supporting a logical and reasonable inference of criminal activity. Aten, 130 Wash.2d at 656, 927 P.2d 210; State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995). In determining whether the State has produced sufficient prima facie evidence, we must assume the truth of the State's evidence and all reasonable inferences drawn therefrom. See Bremerton v. Corbett, 106 Wash.2d 569, 571, 723 P.2d 1135 (1986); State v. Pineda, 99 Wash.App. 65, 77-78, 992 P.2d 525 (2000). But the independent evidence must support a logical and reasonable inference of criminal activity only. Aten, 130 Wash.2d at 659-60, 927 P.2d 210. If the independent evidence also supports logical and reasonable inferences of non-criminal activity, it is insufficient to establish the corpus delicti. Aten, 130 Wash.2d at 659-60, 927 P.2d 210.
¶ 11 Whalen concedes that he possessed pseudoephedrine, but he argues that possession alone is insufficient to show intent to manufacture methamphetamine without independent *58 corroborative evidence. Whalen asserts that the State failed to establish his intent to manufacture and that the trial court unreasonably and erroneously inferred intent solely from his possession of pseudoephedrine.
¶ 12 Whalen is correct that bare possession of pseudoephedrine is not enough to prima facie establish the corpus delicti for an intent to manufacture conviction; at least one additional factor, suggestive of intent, must be present. See State v. McPherson, 111 Wash.App. 747, 759, 46 P.3d 284 (2002). To satisfy the corpus delicti rule in this case, the State was required to present prima facie proof that Whalen (1) possessed pseudoephedrine; and (2) intended to manufacture methamphetamine. See State v. Cobelli, 56 Wash.App. 921, 924, 788 P.2d 1081 (1989). Because Whalen concedes possession of pseudoephedrine, the crucial inquiry is whether the State produced sufficient independent corroborative evidence suggesting Whalen's intent to manufacture methamphetamine.
¶ 13 A person acts with intent when he acts with the objective or purpose to accomplish a result which constitutes a crime. RCW 9A.08.010(1)(a). The State argues that (1) pseudoephedrine is a primary precursor to methamphetamine; (2) the amount of pseudoephedrine in Whalen's possession was indicative of an intent to manufacture; (3) his efforts to shoplift seven packages of cold remedies containing pseudoephedrine indicates an illicit use was intended; and (4) the fact that RCW 69.43.110 limits individuals to the purchase of three packages of pseudoephedrine in a 24 hour period implies an intent to manufacture if one buys or shoplifts more than the legal limit.
¶ 14 In determining whether the State's evidence is sufficient to meet its burden, we review the evidence in the light most favorable to the State. Pineda, 99 Wash.App. at 77, 992 P.2d 525. Here, absent Whalen's admissions to Schaeffer, the State's evidence indicates only that store security apprehended Whalen attempting to shoplift more pseudoephedrine than he could legally purchase at one time. But Whalen's mere possession of the amount of pseudoephedrine in the seven boxes may not have been illegal if acquired within the statutory timeframe.[5] Nor were there other indications that Whalen was part of a manufacturing plan. The dissent emphasizes that Whalen's attempt to acquire more than three boxes of pseudoephedrine within the statutory 24-hour time period creates the reasonable inference in and of itself that Whalen intended to manufacture methamphetamine.[6] But acquiring more than three packages of pseudoephedrine within a 24-hour period does not constitute possession of pseudoephedrine with intent to manufacture, a class B felony. RCW 69.50.440. Rather, it constitutes a violation of Washington's regulation of the acquisition of pseudoephedrine, a gross misdemeanor. RCW 69.43.110. RCW 69.50.440 and RCW 69.43.110 are distinct offenses punishable by highly disparate penalties. That there are two distinct offenses with disparate punishments indicates that the legislature did not intend to equate the acquisition of more than three boxes of cold medicine containing pseudoephedrine within a 24-hour period with intent to manufacture methamphetamine.
¶ 15 This case is similar to Cobelli. In Cobelli, officers observed Cobelli carry out a *59 series of short conversations with several "clusters" of people in a parking lot near a convenience store. 56 Wash.App. at 922, 788 P.2d 1081. According to officer testimony, Cobelli made contact with a person or persons, talked briefly, and then walked away. Cobelli, 56 Wash.App. at 922, 788 P.2d 1081. Officers did not observe any actual exchanges, but testified that, "[t]he manner in which it was happening [was] real indicative of what I've seen before in the sales and purchase of drugs." Cobelli, 56 Wash.App. at 922, 788 P.2d 1081. After police arrested Cobelli, he removed baggies containing a total of 1.4 grams of marijuana and money from his pockets and admitted selling two baggies of marijuana for $10 each. Cobelli, 56 Wash.App. at 923, 788 P.2d 1081. Cobelli was found guilty of possession of marijuana with intent to deliver. Cobelli, 56 Wash.App. at 922, 788 P.2d 1081.
¶ 16 Reversing the conviction, Division One of this court held that in order for the State to satisfy the corpus delicti rule, it had to produce prima facie evidence that Cobelli (1) possessed marijuana; and (2) intended to deliver it. Cobelli, 56 Wash.App. at 924, 788 P.2d 1081. The court held that in the absence of Cobelli's admissions, there was insufficient independent corroborative evidence of intent to deliver. Cobelli, 56 Wash.App. at 924, 788 P.2d 1081. The court observed that while the manner in which Cobelli interacted with others in the parking lot was consistent with the sale of drugs, there was no actual observation of exchange of drugs for money. Cobelli, 56 Wash.App. at 924-25, 788 P.2d 1081. Furthermore, although Cobelli removed marijuana and money from his pockets, the amount of marijuana was relatively small and the record did not indicate exactly how much money Cobelli had in his possession. Cobelli, 56 Wash.App. at 924-25, 788 P.2d 1081.
¶ 17 More recently, we addressed a similar issue in State v. Moles, 130 Wash.App.2d 461, 123 P.3d 132, (2005). In Moles, the defendants shoplifted pseudoephedrine from three different stores within a short timeframe and had over 400 loose tablets in their stolen vehicle. We held that the short timeframe involving three purchases at three separate stores, the loose pills, and evidence of a coffee filter containing methamphetamine in a defendant's pocket constituted sufficient evidence of intent to manufacture. Moles, 130 Wash.App. at 466-67, 123 P.3d 132. Here, the State had to prove more than mere possession of unopened boxes of pseudoephedrine to carry its burden of a prima facie showing of Whalen's intent to manufacture methamphetamine.
¶ 18 Therefore, absent Whalen's statements and assuming the truth of the State's evidence and all reasonable inferences from it, the State failed to produce sufficient evidence that Whalen shoplifting cold tablets was the first step of a methamphetamine manufacturing process. Under these circumstances, the trial court erred when it refused to suppress Whalen's statements to Schaeffer.
¶ 19 Whalen raises additional issues that we do not address because we hold that the charges should have been dismissed upon suppression of his statements to Schaeffer.
¶ 20 We reverse and vacate his conviction.
I concur: HOUGHTON, J.
HUNT, J.
¶ 21 I respectfully dissent. I disagree with the majority's holding that the evidence does not sufficiently establish the corpus delicti independent of Whalen's voluntary confession. I would uphold the trial court's finding that (1) Whalen's secretive possession and shoplifting of seven boxes of pseudoephedrine was not reasonably consistent with an innocent purpose, and (2) a trier of fact could reasonably conclude that Whalen intended to use this excessive quantity of pseudoephedrine (as compared to an innocuous quantity for personal use) to manufacture methamphetamine, whether as the principal manufacturer or as an accomplice supplying the precursor drugs to another for methamphetamine manufacture.
¶ 22 Accordingly, I would affirm the trial court's ruling that that these facts constitute sufficient independent corroborative evidence to establish the corpus delicti of the charged crime. And I would hold that admission of *60 Whalen's statement to the police did not violate the corpus delicti rule.
¶ 23 As the majority acknowledges, under the corpus delicti rule,
The confession or admission of a defendant charged with a crime cannot be used to prove the defendant's guilt in the absence of independent evidence corroborating that confession or admission. State v. Aten, 130 Wash.2d 640, 655-56, 927 P.2d 210 (1996). . . . If sufficient corroborative evidence exists, the confession or admission of a defendant may be considered along with the independent evidence to establish a defendant's guilt. Aten, 130 Wash.2d at 656, 927 P.2d 210.
To be sufficient, independent corroborative evidence need not establish the corpus delicti, or "body of the crime," beyond a reasonable doubt, or even by a preponderance of the evidence. [State v.] Riley, 121 Wash.2d 22,] 32, [846 P.2d 1365 (1993)]. Rather, independent corroborative evidence is sufficient if it prima facie establishes the corpus delicti. State v. Smith, 115 Wash.2d 775, 781, 801 P.2d 975 (1990). Prima facie in this context means evidence of sufficient circumstances supporting a logical and reasonable inference of criminal activity. Aten, 130 Wash.2d at 656, 927 P.2d 210; State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995). In determining whether the State has produced sufficient prima facie evidence, we must assume the truth of the State's evidence and all reasonable inferences drawn therefrom. See Bremerton v. Corbett, 106 Wash.2d 569, 571, 723 P.2d 1135 (1986); State v. Pineda, 99 Wash.App. 65, 77-78, 992 P.2d 525 (2000).
Majority at 57 (footnote omitted; emphasis added).
¶ 24 I agree that mere possession of pseudoephedrine tablets is insufficient to prove intent to manufacture methamphetamine and that "at least one additional factor, suggestive of intent, must be present." Majority at 58 (emphasis added). But here there is other evidence "suggestive of intent," in addition to mere possession, that is sufficient to satisfy the corpus delecti rule.
¶ 25 RCW 69.43.110(2) and (4) make it a gross misdemeanor to "purchase or acquire" more than three boxes of pseudoephedrine within a 24-hour period.[7] The Legislature has amended this statute to lower the number to two boxes per 24-hour period, effective *61 next year. Laws of 2005, ch. 388, § 4. In enacting this law, the Legislature has expressly recognized that restricting access to certain "precursor drugs" used to manufacture methamphetamine is an "essential step to controlling the manufacture of methamphetamine." Laws of 2005, ch. 388, § 1. The seven boxes of pseudoephedrine that Whalen shoplifted are, therefore, by definition such precursor drugs.
¶ 26 That pseudoephedrine possession can also have an innocent purpose does not require exclusion of this evidence under the corpus delecti rule here. A reasonable trier of fact could reasonably infer that Whalen's surreptitious plan to conceal, to leave the store, and later to return to steal the seven concealed boxes of pseudoephedrine cold tablets, was an unambiguous attempt to circumvent a law designed to prevent the quick collection of sufficient quantities of precursor drugs needed to manufacture methamphetamine. Rather than legally purchasing the pseudoephedrine over the course of three days, perhaps plausibly for personal use, Whalen intentionally broke the law, planned, and shoplifted seven packages at one time. That Whalen chose to collect, to conceal, and then to steal seven boxes all at once sufficiently supports the reasonable inference that he intended to use them for the manufacture of methamphetamine, most likely shortly thereafter.
¶ 27 This case is unlike Aten, where the facts logically and reasonably supported an inference of the baby's death by either innocent sudden infant death syndrome (SIDS) or criminal smothering. 130 Wash.2d 640, 660-62, 927 P.2d 210 (1996). Here, in contrast, the only logical and reasonable conclusion was that Whalen intended to use the tablets for manufacturing methamphetamine. Unlike Aten, here, there are no logical or reasonable inferences that Whalen needed to steal seven boxes of decongestant in a single action for a non-criminal purpose. Even the majority hints at this reasonable inference of Whalen's illegal purpose when it states, "Whalen's mere possession of the amount of pseudoephedrine in the seven boxes may not have been illegal if acquired within the statutory timeframe." Majority at 58 (emphasis added.) The negative implication of this observation is that since Whalen did not acquire this quantity of pseudoephedrine within the legal statutory timeframe, the reasonable inference is that his possession, and therefore, his purpose, was illegal.
¶ 28 The facts here also contrast with those in State v. Cobelli, where the defendant possessed a small amount of marijuana from which the court could infer it was solely simple possession without the intent to deliver. 56 Wash.App. 921, 925, 788 P.2d 1081 (1989). Here, the sheer number of boxes and the amount of cold tablets that Whalen stole does not give rise to a similar inference of a lesser degree of culpability. Instead, as in State v. Moles, the corroborating evidence of his multi-step plan and the amount of pseudoephedrine he attempted to steal lead to the logical and reasonable inference that Whalen intended either to manufacture methamphetamine himself or to deliver it to someone else to use in its manufacture. 130 Wash.App.2d 461, 466-67, 123 P.3d 132 (2005). Regardless, the evidence showed that Whalen intended to use the pseudoephedrine to manufacture methamphetamine either as a principal or as an accomplice.
¶ 29 Given the purpose of RCW 69.43.110, to control an essential step in the manufacture of methamphetamine, and Whalen's multi-step plan to circumvent this law, the only reasonable inference available for Whalen's actions was his illegal purpose the manufacture of methamphetamine. Reiterating the well-settled standard of review that the trial court has broad discretion in deciding what evidence to admit, I would hold that Whalen has failed to show that the trial court abused its discretion in allowing his voluntary admissions into evidence.
¶ 30 With the admission of Whalen's statement of his intent to deliver the tablets to another to use in manufacturing methamphetamine, to repay a drug debt, I would also hold, as the majority acknowledges, that sufficient evidence supports Whalen's conviction *62 for unlawful possession of ephedrine or pseudoephedrine with the intent to manufacture.[8]
¶ 31 Again, I would affirm.
NOTES
[1] RAP 10.10.
[2] Three of the boxes were Sudafed® and four were Target® brand.
[3] Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The independent corroborative evidence may be either direct or circumstantial. State v. Aten, 130 Wash.2d 640, 655, 927 P.2d 210 (1996).
[5] While possession of pseudoephedrine is generally legal, possession in an amount of more than 15 grams is unlawful under certain circumstances. RCW 69.43.120. The record is unclear on how much pseudoephedrine Whalen had in his possession at the time of his arrest. Even if Whalen possessed more than 15 grams of pseudoephedrine at the time of his arrest, his offense would have been a gross misdemeanor, not a felony. Further, the State did not charge Whalen with possession of more than 15 grams of pseudoephedirne.
[6] The dissent reasons that:

A reasonable trier of fact could reasonably infer that Whalen's surreptitious plan to conceal, to leave the store, and later to return to steal the seven concealed boxes of pseudoephedrine cold tablets, was an unambiguous attempt to circumvent a law designed to prevent the quick collection of sufficient quantities of precursor drugs needed to manufacture methamphetamine. Rather than legally purchasing the pseudoephedrine over the course of three days, perhaps plausibly for personal use, Whalen intentionally broke the law, planned, and shoplifted seven packages at one time.
Dissent at 61.
[7] The majority's assertion at n. 5 on page 58 that Whalen possessed a legal quantity of pseudephedrine is in error. RCW 69.43.110(2) and (4) clearly make it a gross misdemeanor to "purchase or acquire" more than three boxes of pseudoephedrine within a 24-hour period. Subsection (1) of this statute uses the disjunctive "or" between subsections (a) and (b), which references three grams of the listed substances rather than the number of packages. RCW 69.43.110(1).

RCW 69.43.110, Ephedrine, pseudoephedrine, phenylpropanolamine Sales restrictions Penalty, provides:
(1) It is unlawful for a pharmacy licensed by, or shopkeeper or itinerant vendor registered with, the department of health under chapter 18.64 RCW, or an employee thereof, or a practitioner as defined in RCW 18.64.011, knowingly to sell, transfer, or to otherwise furnish, in a single transaction:
(a) More than three packages of one or more products that he or she knows to contain ephedrine, pseudoephedrine, or phenylpropanolamine, their salts, isomers, or salts of isomers; or
(b) A single package of any product that he or she knows to contain more than three grams of ephedrine, pseudoephedrine, or phenylpropanolamine, their salts, isomers, or salts of isomers, or a combination of any of these substances.
(2) It is unlawful for a person who is not a manufacturer, wholesaler, pharmacy, practitioner, shopkeeper, or itinerant vendor licensed by or registered with the department of health under chapter 18.64 RCW to purchase or acquire, in any twenty-four hour period, more than the quantities of the substances specified in subsection (1) of this section.
(3) It is unlawful for any person to sell or distribute any of the substances specified in subsection (1) of this section unless the person is licensed by or registered with the department of health under chapter 18.64 RCW, or is a practitioner as defined in RCW 18.64.011.
(4) A violation of this section is a gross misdemeanor.
(emphasis added).
RCW 69.43.120(1), which the majority cites in support of its assertion, describes a separate crime, not at issue here simple, passive possession of more than 15 grams of pseudoephedrine, also a gross misdemeanor. This statute does not, however, as the majority implies, decriminalize Whalen's actively acquiring more than three packages, a gross misdemeanor under RCW 69.43.110(2).
[8] Reiterating the Supreme Court's explanation of the corpus delecti rule in Aten, if sufficient corroborative evidence exists, the confession or admission of a defendant may be considered alongside the independent evidence to establish a defendant's guilt. 130 Wash.2d at 656, 927 P.2d 210.