# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 88037-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| TONY RICO SANDERS, | |
| Appellant. | |

BIRK, J. — A jury convicted Tony Sanders of completed and attempted aggravated murder in the first degree, among other charges. Sanders now argues the court should have suppressed his confession as he did not validly waive his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He claims he never adequately understood his right to counsel. He alleges that after he referenced a prior proceeding where a court found him to be not indigent his confusion arose when interrogating officers stated they could not give "legal advice." Sanders also asserts sentencing errors and in a statement of additional grounds (SAG) makes ER 404(b) and *corpus delicti* claims. We affirm.

I

The State charged Sanders with aggravated murder in the first degree for his actions against G.C. in November 2021.[1] The State further charged Sanders

---

[1] While not directly at issue on appeal, the State further charged Sanders with assault in the fourth degree for his actions against G.C. in October 2021, as well as malicious mischief in the third degree for "caus[ing] physical damage to vehicle [windows], the property of another" in November 2021.

with attempted aggravated murder in the first degree, assault in the first degree, and robbery in the first degree for his actions against T.L. on the same date.

The State alleged Sanders stabbed G.C., his intimate partner, and T.L. while stealing T.L.'s phone after she attempted to call 911. G.C. succumbed to her injuries at the hospital. T.L. survived and testified.

This appeal centers on Sanders's confession at his interrogation on November 10, 2021, and whether he validly waived his Miranda rights. We provide the relevant context for this interrogation below.

A

At Sanders's October 18, 2021, arraignment before a municipal court, Sanders's faced a charge for assault in the fourth degree (domestic violence) related to an incident with G.C. Sanders received a public defender for the arraignment.

The municipal court found Sanders was not indigent as he made "quite a bit above the threshold for the appointment of an attorney" and advised him to obtain counsel "as quickly as possible." Before the hearing concluded, Sanders's public defender informed him "you were not qualified for the public defender so our representation will cease now. You'll have to find private counsel." During Sanders's subsequent interrogation on November 10, 2021, Sanders appeared to refer back to his October arraignment indicating he had not successfully found private counsel.

B

On November 10, 2023, Tacoma police arrested Sanders in connection with the incidents with G.C. and T.L.  The police transported Sanders to the Tacoma Police Department headquarters where he was interrogated by Detective Jeffrey Maahs and Detective Steven Shank.[2]  The excerpts below occurred prior to any interrogative questioning:

> Maahs:      All right.  So just so you know, everything in this room is audio and visually, visually recorded.  Okay.
>
> Sanders:    Yeah.
>
> . . . .
>
> Maahs:      All right.  So right now I'm just gonna advise you of your rights.  All right.
>
> Sanders:    Yep.

Immediately thereafter, Maahs read a hardcopy Miranda waiver nearly verbatim:

> Maahs:      All right.  You have the right to remain silent.  Any statement that you do make can be used against, used as evidence against you in a court of law.  You have the right at this time to talk to an attorney of your choice and to have your attorney present before or during questioning and the making of any statement.  If you cannot afford an attorney you are entitled to have one appointed for you without cost to you.  And you can have the attorney present at any time during questioning and the making of any statements.  You may stop answering questions or ask for an attorney at any time during any questioning and the making of any statement.  Do you understand these rights?

---

[2] In addition to a written transcript, this court has reviewed the video and audio recording of the interrogation that was presented to and reviewed by the trial court.

Sanders: Yes.

Maahs: All right. Having these rights in mind are you willing to talk to us?

Sanders: *I'll talk to you guys, but like I said, I couldn't afford to get the attorney and they said I couldn't get a state prosecutor[3] because when I was in jail the last time they said I was making too much, even though I lost my job while I was in the jail.*

Maahs: Okay.

Sanders: Okay.

Shank: So do you want to talk to us?

Sanders: *I'll talk to you guys. And like I said an attorney's always nice too, you know.*

Maahs: Okay. So we, we just want to get a little, a little bit of background from you.

(Emphasis added.) At this point, Maahs handed the Miranda waiver to Shank who then placed it on the table in front of Sanders. Sanders leaned forward to read the waiver. The officers and Sanders continued speaking as follows:

Shank: (Unintelligible) we'll just have you sign right here.

Sanders: *And where's the attorney at?*

Maahs: Would you want to put your glasses on?

Sanders: No. They hurt my eyes that's the problem.[4]

*So, public defender, attorney since I can't afford one or what are you guys talking about?*

---

[3] We assume Sanders's reference to a "state prosecutor" intended to reference a public defender.

[4] Sanders's glasses were on the table in front of him throughout the entire portion of the interrogation provided here.

> Shank:       *Well, we can't really give you legal advice.*
>
> Sanders:    *Like I said, that you can have an attorney but then you can't get an attorney.*
>
>                      What's this one?
>
> Maahs:      So this you'd . . . .

(Emphasis added.) Sanders, still leaning forward, audibly read portions of the Miranda waiver to himself:

> Sanders:    I want the police department, Pierce County Sheriff's Department, other 11/10/21. (Unintelligible) is 3 (Unintelligible). Incident number 21-305-00483.
>
>                      Advisement of right, before questioning and the making any other statement I want to remind you your rights. And you have (Unintelligible) court of law and I can save stuff.

Immediately thereafter, Sanders signed the Miranda waiver. By signing, Sanders attested to the waiver's statements that he "understand[s] each of these rights," has "been made fully aware of these rights," and "voluntarily wish[es] to answer questions now."

In response to the officers' questions, Sanders ultimately confessed to stabbing both G.C. and T.L., as well as taking T.L.'s phone. Sanders also pointed the police to the locations of physical evidence, including the knife and T.L.'s phone.

C

By November 16, 2021, Sanders received a public defender through the Department of Assigned Counsel. On August 7, 2023, Sanders moved through

5

his assigned counsel to suppress his statements from the November 10, 2021, interrogation under CrR 3.1 and 3.5.

Sanders argued he "did not understand he could speak to a court-appointed attorney prior to questioning" and the "waiver of his Miranda rights was equivocal." Sanders urged his "statements clearly indicate that he knows he can have an attorney *in theory*, but he does not believe he can *actually* get one, because he cannot afford to hire one, but also makes too much money to be appointed one." Sanders further argued "law enforcement did not clarify whether he wanted to waive his right to an attorney" and "continued with his interrogation anyway." Instead, the officers "say nothing, except 'we can't really give you legal advice' and allow Mr. Sanders to assume their response is affirmation of his mistaken belief."

The court denied Sanders's motion to suppress and issued findings of fact and conclusions of law, which will be discussed below.

D

After a trial in August 2023, the jury convicted Sanders as charged. The court sentenced Sanders to mandatory life imprisonment without possibility of release under RCW 10.95.030(1) for his aggravated murder in the first degree conviction. Sanders timely appealed and filed a SAG in this court.

II

Sanders argues that "what happened in [his] interrogation was inadequate to amount to a valid waiver of his Miranda rights because he was misinformed." Sanders alleges two sources for this confusion. First, he cites his past arraignment in municipal court where he was found to be not indigent, and so denied counsel

6

at public expense at that time. Second, his "expressions of confusion were variously met with silence, or misinformation in the form of being told by police that he was asking for 'legal advice,' which the police would not give him.

The United States Supreme Court held in Miranda that

> [p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

384 U.S. at 444. "The State bears the burden of showing a knowing, voluntary, and intelligent waiver of Miranda rights by a preponderance of the evidence." State v. Athan, 160 Wn.2d 354, 380, 158 P.3d 27 (2007). " 'The preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true.' " State v. Arredondo, 188 Wn.2d 244, 257, 394 P.3d 348 (2017) (quoting Mohr v. Grant, 153 Wn.2d 812, 822, 108 P.3d 768 (2005)).

Sanders assigns error to three findings of fact and two conclusions of law within the court's CrR 3.5 order. "[F]indings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged, and, if challenged, they are verities if supported by substantial evidence in the record." State v. Broadaway, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Solomon, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002). A reviewing court will "not disturb a trial court's conclusion that a waiver was voluntarily made if the

7

trial court found, by a preponderance of the evidence, that the statements were voluntary and substantial evidence in the record supports the finding." Athan, 160 Wn.2d at 380 (citing Broadaway, 133 Wn.2d at 129). We then "review de novo whether the trial court's conclusions of law are properly derived from its findings of fact." State v. Gasteazoro-Paniagua, 173 Wn. App. 751, 755, 294 P.3d 857 (2013). For this inquiry, " '[o]nly if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.' " State v. Mayer, 184 Wn.2d 548, 556, 362 P.3d 745 (2015) (internal quotation marks omitted) (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)). Additionally, "[i]nvocation and waiver [of Miranda rights] are entirely distinct inquiries, and the two must not be blurred by merging them together." Smith v. Illinois, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984). We address each challenged finding of fact and conclusion of law below.

A

In finding of fact V, the court found

the defendant was taken to an interview room at the Tacoma Police Department where he gave a statement to law enforcement. The entirety of the statement was audio and video recorded. At the beginning of the interview, the defendant was read his Miranda rights and signed a Miranda form. . . .

. . . .

On the video, the defendant can be seen reviewing the written form and signing it. When the defendant asks 'And where's the

attorney at?' he is looking directly down at the form and is looking for the attorney information in the document he is actively reading.

(Formatting added.)

On appeal, there is no dispute the hardcopy Miranda waiver and Maahs's initial reading of it accurately stated Sanders's rights as required by Miranda. 384 U.S. at 444. In line with the court's finding, the video shows Sanders leaning forward to read the Miranda waiver when he states, "[W]here's the attorney at?"

We hold sufficient evidence supports finding of fact V.

B

In finding of fact VI, the court found

[t]hat the defendant made a knowing, voluntary, intelligent waiver of his right to remain silent based on the fact that the defendant was read his Miranda warnings on this case, had, on at least two previous cases, been advised of his Miranda rights, acknowledged he understood his rights, and had a voluntary conversation with law enforcement after being read his rights.

(Formatting added.) The court's reference to how Sanders "was read his Miranda warnings on this case," as discussed above, is supported by the record. (Formatting added.) The court further finding Sanders "acknowledged he understood his rights, and had a voluntary conversation with law enforcement after being read his rights," aligns with the record where Sanders expressly said "[y]es" when asked if he "understand[s] these rights?" immediately after Maahs's reading of the Miranda waiver. Sanders also expressly said, "I'll talk to you guys" immediately thereafter when asked, "Having these rights in mind are you willing to talk to us?"

9

1

Sanders argues the State did not show a knowing and intelligent waiver of his right to counsel by pointing to his then referencing his prior arraignment and subsequent inability to afford an attorney. However, Sanders was speaking to his ability to afford counsel instead of having one at public expense, rather than his right to have counsel present during questioning. The court could validly discredit Sanders's claim of confusion based on his affirming to officers that he understood his rights, his reading the Miranda waiver out loud to himself, and his signing immediately thereafter attesting again that he "understand[s] each of these rights" of which he is "fully aware." The Miranda waiver stated that Sanders has "the right at this time to talk to an attorney . . . before and during questioning" and that "[i]f you cannot afford an attorney, you are entitled to have one appointed for you without cost to you."

2

Sanders points to Shank stating they could not offer Sanders " 'legal advice' " as misinformation. But the officers' unwillingness to attempt to expand on the Miranda warnings they had given was not misinformation as this context transpired, nor does it rise to the level of United States v. Garcia, 431 F.2d 134 (9th Cir. 1970) on which Sanders relies. There, "agents gave [the defendant] several different versions of the Miranda bundle of warnings" and "[o]n no occasion was a warning given fully complying with Miranda." Garcia, 431 F.2d at 134 (formatting added). Here, it is undisputed the Miranda waiver and Maahs's recitation of it provided an accurate and plainly worded Miranda warning.

In State v. Whitaker, we rejected a similar argument that "[Federal Bureau of Investigation] agents 'affirmatively misrepresented' [Whitaker's] right to counsel." 133 Wn. App. 199, 216, 135 P.3d 923 (2006). There, Whitaker asked about when he could talk to an attorney, and the "agents told Whitaker the court 'would deal with this' when he went to court the next morning," after his questions about the right to counsel. Id. However, this court held that because "the agents also told Whitaker he could request an attorney 'at that moment' " he "could not have reasonably believed that he did not have the right to counsel at that moment." Id. at 216-17. Here too, Maahs's recitation and the Miranda waiver accurately stated Sanders's rights, including that he had the right to an attorney "at this time" and "before and during questioning."

This matter is also unlike Mayer, where the officer's "warnings conditioned the attachment of [the defendant's] right to appointed counsel on several future events," as opposed to being immediately available before or during the investigation. 184 Wn.2d at 563. The court distinguished a conditional statement of rights from officers relying upon a "written advice of rights form," which " 'touched all the bases required by Miranda.' " Mayer, 184 Wn.2d at 563 (quoting Duckworth v. Eagan, 492 U.S. 195, 198, 203, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989)). Maahs and Shank did not express a statement of rights conditioned on future events. Id. Instead, the officers relied on an accurate Miranda waiver, similar to

the written advice of rights form discussed in Mayer, that indicated Sanders had the right to counsel at that time.[5]

3

The court also found Sanders had "on at least two previous cases, been advised of his Miranda rights, acknowledged he understood his rights, and had a voluntary conversation with law enforcement after being read his rights." Sanders argues a "defendant's prior experience with Miranda warnings weighs little in general, and in this case to no extent."

Our Supreme Court has held a "defendant's prior experience with police, crime, custodial interrogations, and the criminal justice system in general is particularly relevant." State v. Luna, No. 103251-0, slip op. at 28 (Wash. Oct. 30, 2025), https://www.courts.wa.gov/opinions/pdf/1032510.pdf. The defendant in Luna "had never been questioned or interrogated by police as a suspect" and there "was also no evidence Luna had ever been given a Miranda warning or exercised her right to silence or counsel before the day of the interrogation." Id. at 3. In contrast, the defendant in State v. Hutchinson, "had been advised of his rights at least five separate times in recent years" and "[e]ach time, he acknowledged

---

[5] Compare the statement here, ("You have the right at this time to talk to an attorney of your choice and to have your attorney present before and during questioning. . . . If you cannot afford an attorney, you are entitled to have one appointed for you without cost to you and to have the attorney present at any time during any questioning."), with the statement discussed in Mayer (" 'You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one . . . one will be appointed for you.' "). Mayer, 184 Wn.2d at 563 (emphasis omitted) (quoting Duckworth, 492 U.S. at 198).

understanding those rights, waived them, and spoke to police." 135 Wn.2d 863, 885, 959 P.2d 1061 (1998), abrogated on other grounds by State v. Jackson, 195 Wn.2d 841, 856, 467 P.3d 97 (2020).

Here, Sanders previously received Miranda warnings on at least three other occasions. First, in October 2021 a state trooper arrested Sanders for driving under the influence and read him a "department issued Miranda Rights Card," after which Sanders "acknowledged his rights and agreed to speak." Second, in January 2018 Sanders heard a Tukwila police officer "read Sanders his Miranda Rights which he exercised" after which he was arrested. Third, in March 2009 a Pierce County sheriff's deputy "advised [Sanders] of his [Miranda] warning rights, which he stated he understood and agreed to waive."[6]

4

Sanders also argues that doubt about whether he was validly waiving his rights needed to be clarified at the time, claiming "[w]hat should have happened here, when [he] expressed confusion as to whether he could actually get an attorney, is that an officer should have properly clarified the right." Sanders also supplements this argument in his SAG. We disagree.

---

[6] The authorities recounted above do not state a defendant's past experience with Miranda warnings automatically establishes they understand their rights at subsequent proceedings. Hutchinson, 135 Wn.2d at 885; Luna, slip op. at 28, 35. Rather, these prior experiences are part of the totality of circumstances around a defendant's Miranda waiver. Luna, slip op. at 28, 35; Mayer, 184 Wn.2d at 556.

We also note that at least two of the past Miranda advisements the State offered here were much more distant in the past than those on which the State relied in Hutchinson, rendering their probative value clearly less.

In 1982, our Supreme Court, when "applying the United States Constitution's Fifth Amendment, stated that a suspect's equivocal request for an attorney forbids any further police questions except to clarify the request." State v. Radcliffe, 164 Wn.2d 900, 902, 194 P.3d 250 (2008) (citing State v. Robtoy, 98 Wn.2d 30, 39, 653 P.2d 284 (1982)). "Twelve years later, the United States Supreme Court clarified otherwise; under the Fifth Amendment, once a suspect has knowingly waived his right to an attorney, he must explicitly ask for an attorney or the police may continue questioning." Id. (citing Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)). "Davis is the law under the federal constitution." Id. at 907.

But Sanders's briefing and SAG point to authority limiting this principle to postwaiver invocation of Miranda rights, not at issue here, in contrast to waiver. United States v. Rodriguez interpreted Davis to "address[] only the scope of invocations of Miranda rights in a *post-waiver* context." Rodriguez, 518 F.3d 1072, 1078-79 (9th Cir. 2008). Rodriguez focused on the language from Davis that " '*after* a *knowing and voluntary waiver of the* Miranda *rights*, law enforcement officers may *continue* questioning until and unless the suspect clearly requests an attorney.' " Rodriguez, 518 F.3d at 1078 (quoting Davis, 512 U.S. at 461). In other words, the Ninth Circuit held only after a valid Miranda waiver does "the suspect . . . bear[] the 'burden' of cutting off questioning by unambiguously retracting the clear waiver he has already given." Id. at 1079. According to Rodriguez, to the extent Ninth Circuit law requires prewaiver clarification of a suspect's wishes concerning his Miranda rights, "it has not been superseded by Davis." Id. at 1080.

In Radcliffe, our Supreme Court did not adopt Rodriguez. Radcliffe, 164 Wn.2d at 906-07. Moreover, Rodriguez is inapposite here. "We also infer a waiver 'when a defendant voluntarily discusses the charged crime with police officers and indicates an understanding of his rights.' " State v. Campos-Cerna, 154 Wn. App. 702, 709, 226 P.3d 185 (2010) (quoting State v. Ellison, 36 Wn. App. 564, 571, 676 P.2d 531 (1984)). Here, the trial court could conclude Sanders waived Miranda when he both expressly stated he understood his rights and that he would talk to the officers immediately after Maahs's recitation of his Miranda rights.

Sanders further negated any need for clarification when he suspended the conversation to read the written Miranda warnings and sign them. To reiterate, Sanders stated the following when leaning forward to read the Miranda waiver placed in front of him:

> Sanders: Like I said, that you can have an attorney but then you can't get an attorney.
>
> *What's this one?*
>
> Maahs: *So this you'd . . . .*
>
> Sanders: I want the police department, Pierce County Sheriff's Department, other 11/10/21. (Unintelligible) is 3 (Unintelligible). Incident number 21-305-00483. Advisement of right, before questioning and the making any other statement I want to remind you your rights. And you have (Unintelligible) court of law and I can save stuff.

(Emphasis added.) As shown above, Sanders opted to suspend the conversation and read the accurate Miranda waiver himself out loud instead of waiting for Maahs's response. Sanders then signed the waiver to attest he was "fully aware

15

of these rights" and "understand[s] each of these rights." Only after that point did the officers begin their interrogation.

We hold substantial evidence supports the court's finding of fact VI that Sanders's voluntary, knowing, and intelligent waiver of his <u>Miranda</u> rights.

C

Sanders also assigns error to the court's finding of fact VII, which states,

> The court finds that the defendant's statements regarding an attorney contained above are not an unequivocal request for counsel. The court find that the defendant's statement 'where's the attorney at' is a reference to the attorney information contained within the form and is not a request for an attorney in the interview. The court finds that the defendant clearly conveyed to law enforcement that he wished to speak to them.

Sanders offers little substantive argument on whether Sanders unequivocally requested counsel, instead focusing on the validity of his <u>Miranda</u> waiver, which is a distinct inquiry from invocation. <u>Smith</u>, 469 U.S. at 98.

In support of its finding, the court observed "the defendant's statement 'where's the attorney at' is a reference to the attorney information contained within the form and is not a request for an attorney in the interview." This finding is supported by substantial evidence as Sanders's statement immediately followed both Shank placing the <u>Miranda</u> waiver in front of him and stating, "[W]e'll just have you sign here" as Sanders leaned forward to read the waiver out loud to himself. The court further finding Sanders "wished to speak" with "law enforcement" is supported by Sanders twice stating, "I'll talk to you guys," signing the <u>Miranda</u> waiver attesting he "voluntarily wish[es] to answer questions now," and as

16

discussed above is further buttressed by the full context of his conversation with the officers.

We hold substantial evidence supports the court's finding of fact VII.

D

The trial court's supported findings in turn support the legal conclusion that Sanders's confession was admissible at trial under Miranda. Gasteazoro-Paniagua, 173 Wn. App. at 755. Sanders assigns error to conclusion of law V,[7] which reads,

> That on November 10, 2021, the defendant was in custody and subjected to interrogation. The court finds the defendant was properly advised of his Miranda rights. Both the oral advisement of rights and the written advisement of rights contained a complete and accurate renditions of the defendant's Miranda right as required under CrR 3.5 and Miranda . . . . The court finds by a preponderance of evidence that the defendant made a knowing, voluntary[,] intelligent waiver of his right to remain silent on November 10, 2021.

(Some formatting added.) The above conclusion flows from the court finding the Miranda waiver and Maahs's reading of it accurately stated Sanders's rights. The full context of Sanders's interactions with the officers, including Sanders opting to read the accurate Miranda waiver out loud to himself before signing, further supports the court's conclusion that he made a knowing, voluntary, and intelligent waiver of his rights. We hold the "the trial court's conclusions of law are properly derived from its findings of fact." Gasteazoro-Paniagua, 173 Wn. App. at 755. In

---

[7] Sanders also assigns error to conclusion of law VI, in which the court determined he did not unequivocally "invoke" his Miranda rights. However, Sanders's arguments take issue with the court addressing invocation "rather than determining that Mr. Sanders did not knowingly *waive* his Miranda rights," (emphasis added), and otherwise focus on waiver, as opposed to substantively addressing invocation, which is legally distinct. Smith, 469 U.S. at 98.

turn, we hold the court did not err by denying Sanders's motion to suppress his confessions.

III

Sanders asserts three claims in his SAG. His first claim supplements his Miranda claim as discussed above. His remaining two claims assert errors under ER 404(b) and the *corpus delicti* rule. We reject both.

A

Sanders argues the court abused its discretion under ER 404(b) by admitting statements from G.C.'s father to support his conviction for murder in the first degree against G.C. The statements of G.C.'s father relate to a September 2021 domestic violence incident between Sanders and G.C.

Sanders argues that under State v. Powell, 126 Wn.2d 244, 262, 893 P.2d 615 (1993), G.C.'s "death was caused by multiple stab wounds" and "[a]ll injuries inflicted upon the victim are indicators that the suspect intended to inflict harm," meaning "the trial court erred by admitting a prior act to prove intent when intent was not at issue." We disagree.

We review a court's decision to admit evidence under ER 404(b) for an abuse of discretion. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court abuses its discretion when it fails to abide by the requirements of ER 404(b). Id.

Here, the State moved to admit "evidence of the defendant's past violent behavior towards" G.C. through her father's statements to police on the September 2021 incident. The State characterized this evidence as showing a "tumultuous

18

relationship that involved a violent assault witnessed by a third party that the defendant admitted began when he discovered [G.C.] was not being faithful." The State urged that the "jury must be able to know about the defendant's prior bad acts in order to understand the volatile dynamics of the defendant's relationship with G.C." as "[w]ithout this background, premeditation and motive are nonsensical."

The court ruled "the evidence the State seeks to admit under ER 404(b) is admissible for the limited purpose of proving premeditation and the defendant's intent, state of mind, and motive, as related to Count 6, Aggravated Murder in the First Degree."

Powell explained, "Evidence of previous disputes or quarrels between the accused and the deceased . . . must be necessary to prove a material issue" such as "intent when intent is at issue or when proof of the doing of the charged act does not itself conclusively establish intent." 126 Wn.2d at 261-62. In Powell, "[p]roof of the act of manual strangulation" was among the evidence establishing an intent to kill. Id. at 262. As a result, Powell upheld this court's holding that "the prior misconduct evidence was improperly admitted for intent" where "intent was not a disputed issue" and, given the nature of the homicide, "none of the contested evidence in this case is necessary to prove intent." Id.

But Powell held evidence of past disputes was admissible for other purposes under ER 404(b), notably, motive. Powell, 126 Wn.2d at 260-61. In addition, this case involved a charge of murder in the first degree, which requires premeditation. RCW 9A.32.030(1)(a). Powell involved a conviction for murder in

19

the second degree, Powell, 126 Wn.2d at 247, which does not require premeditation. RCW 9A.32.050(1)(a).[8] Powell explained, "[e]vidence of previous disputes or quarrels between the accused and the deceased is generally admissible in murder cases, particularly where malice or premeditation is at issue." 126 Wn.2d at 261. Here, the trial court properly admitted evidence of the past dispute to show premeditation. Thus, even if it was error to allow the evidence to show intent, this would not require reversal because a reviewing court "will uphold a trial court's decision to admit evidence of prior misconduct under ER 404(b) if one of its cited bases is justified." Powell, 126 Wn.2d at 264. Sanders focuses solely on intent and does not challenge the trial court's rulings that the statements were properly admitted for premeditation and motive.

We reject Sanders's ER 404(b) claim as Powell supports the trial court's ruling and does not require reversal.

B

Sanders argues this court must reverse his conviction for attempted murder in the first degree against T.L. as his confession "cannot be used to prove guilt absent independent evidence corroborating" it under the *corpus delicti* rule. He claims "[t]here is no reference to any evidence of the mens rea intent to kill" and instead the "evidence supports that [he] stabbed [T.L.] to facilitate a robbery." Sanders refers to court's instructions and RCW 9A.32.030(1)(a) requiring "a

---

[8] RCW 9A.32.50 has been amended since the events of this case transpired. Because the amendment does not impact the statutory language relied on by this court, we refer to the current version of the statute.

premeditated intent to cause the death of another person" to convict a defendant of murder in the first degree. We disagree.

Under the *corpus delicti* rule, a "confession or admission of a defendant charged with a crime cannot be used to prove the defendant's guilt in the absence of independent evidence corroborating that confession or admission." State v. Whalen, 131 Wn. App. 58, 62, 126 P.3d 55 (2005). To satisfy this rule, the State need only show "evidence of sufficient circumstances supporting a logical and reasonable inference of criminal activity," which is a lower bar than even a "preponderance of evidence." Id. *Corpus delicti* involves two elements: (1) an injury or loss (2) caused by someone's criminal act. State v. Cardenas-Flores, 189 Wn.2d 243, 263, 401 P.3d 19 (2017). Mens rea is not required to satisfy *corpus delicti*. Id. at 263-64. The generally prevailing view is that corroborating evidence need only tend to show the major or essential harm involved in the offense charged and not all of the elements technically distinguished. Id. at 264 n.9 (quoting 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 146, at 810 (7th ed. 2013)).

"The corpus delicti doctrine generally is a principle that tests the sufficiency or adequacy of evidence, other than a defendant's confession," State v. Dow, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010), and "[w]e review a challenge to the sufficiency of the evidence de novo." State v. Perry, 6 Wn. App. 2d 544, 552, 431 P.3d 543 (2018). For a *corpus delicti* claim, "we must assume the truth of the State's evidence and all reasonable inferences drawn therefrom." Whalen, 131 Wn. App. at 62.

Here, T.L. testified she witnessed Sanders attacking G.C. Sanders fled after T.L. arrived at the scene of the attack and screamed. However, Sanders returned as T.L. attempted to assist G.C. Sanders then stabbed T.L. seven times, including once in the temple, which cracked her skull.

Sanders's return to the scene and the nature of his attack on T.L. establish for purposes of the *corpus delicti* rule premeditation and a clear intent to kill, well-surpassing "a logical and reasonable inference of criminal activity" on both points. Whalen, 131 Wn. App. at 62; see also State v. Sherrill, 145 Wn. App. 473, 484-85, 186 P.3d 1157 (2008) ("Premeditation is 'the deliberate formation of and reflection upon the intent to take a human life' " and includes consideration of the "method of killing.") (quoting State v. Hoffman, 116 Wn.2d 51, 82, 804 P.2d 577 (1991)); see also State v. Elmi, 138 Wn. App. 306, 313, 156 P.3d 281 (2007) ("[I]t is not necessary for the State to show that [the defendant] verbalized or acted out his intent beforehand[,] . . . intent to kill may be inferred from all the circumstances surrounding the event."). This matter is distinct from Whalen where the State failed to provide any evidence of the defendant's intent to manufacture an illegal substance beyond his "mere possession" of the substance. 131 Wn. App. at 63-65.

We reject Sanders's *corpus delicti* claim as corroborating evidence supports his premeditation and intent to kill T.L.

IV

Sanders argues the sentencing court violated his right to a jury trial by determining same criminal conduct and washout issues, arguing they are

22

"undeniably factual questions" that a jury must determine beyond a reasonable doubt. We conclude we are unable to review these claims of error.

The question of "same criminal conduct" affects certain sentencing decisions under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. See RCW 9.94A.589(1)(a). Similarly, "washout" refers to certain rules for counting prior convictions under the SRA. See RCW 9.94A.525(2)(b), (c), (d), (f); State v. Schwartz, 194 Wn.2d 432, 434, 450 P.3d 141 (2019). Sanders points to nothing in the record showing the court at any time addressed or ruled on washout or same criminal conduct issues. He also does not show that either could have affected the court's sentencing determination when imposing life imprisonment without possibility of release under RCW 10.95.030(1) for his aggravated murder in the first degree, a sentencing statute different from the SRA.[9] Thus, this challenge fails due to inadequate briefing. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); State v. Garcia, 45 Wn. App. 132, 140, 724 P.2d 412 (1986) ("A party seeking review has the burden of perfecting the record so that the appellate court has before it all the evidence relevant to the issue.").

Sanders's failure to show that the trial court ever made rulings on same criminal conduct or washout and his failure to show any effect on his overall sentence foreclose review by this court even though Sanders was simultaneously sentenced on felony convictions subject to the SRA. Aside from the fact his briefing never points to rulings for this court to review, he also does not show that

---

[9] At sentencing, Sanders's attorney acknowledged the "State is correct that the sentence is largely dictated by statute" and "we are in agreement with everything the State has proposed."

his overall sentence would be affected on remand given his mandatory sentence based on his aggravated murder in the first degree conviction.  Cf. In re Pers. Restraint of Rowland, 149 Wn. App. 496, 508, 204 P.3d 953 (2009) ("When a sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway.").

V

We affirm Sanders's judgment sentence.

_Birk, J._

WE CONCUR:

_Díaz, J._            _Mann, J._